[No. 1382.]

THE STATE OF NEVADA. Respondent, *v.* JOHN TROLSON, Appellant.

CRIMINAL LAW—SUFFICIENCY OF INDICTMENT.—Under Stat. of 1887, p. 81, providing that any person to whom any money, property or effects shall have been intrusted, who shall appropriate the same, or any part thereof, in any manner, or for any other purpose than that for which the same was intrusted, shall be guilty of embezzlement, an indictment need not allege that defendant appropriated the property wilfully, feloniously, or with intent to steal, as the offense is complete when the appropriation is made, though he intended to afterwards replace the property taken.

IDEM—CRIMINAL INTENT, HOW DETERMINED.—The intent with which an accused person appropriates money or property to his own use is a question of fact to be determined from the evidence in the particular case.

IDEM—STATUTORY CONSTRUCTION—CONSTITUTIONAL LAW.—The Stat. of 1887, p. 81, is entitled "an act to further define and publish embezzlement." Section one defines embezzlement, and section two fixes the penalty for a violation of section one. *Held,* that as the act is complete within itself, and does not conflict with the other existing statutes relating to embezzlement and its punishment, it does not amend such statutes, and therefore does not violate Sec. 17 of Art. IV. of the constitution, requiring each law to embrace but one subject, which shall be expressed in the title, and that no law shall be revived or amended by reference to its title only.

IDEM—IMPROPER DEFENSE.—On the trial of an indictment charging defendant with the embezzlement of certain money received by him as agent of an express company for transmission, the fact that the money so received was in the safe, constitutes no defense, where defendant was short in his accounts with the company in an amount larger than that alleged to have been embezzled.

IDEM—OBJECTION TO INDICTMENT IN APPELLATE COURT.—An objection to an indictment on the grounds that it does not state facts sufficient to constitute a public offense may be taken for the first time in the appellate court, and is not waived by a failure in the district court to make the point on demurrer or on motion in arrest of judgment. (Concurring opinion of Bigelow, J.)

APPEAL from the District Court of the State of Nevada, Storey county.

*Richard Rising*, District Judge.

The facts sufficiently appear in the opinion.

*P. Reddy*, for Appellant.

I.   The indictment is insufficient.   The facts averred do not constitute a public offense.   The court had no jurisdiction of the subject matter.   The act of 1887, under which the indictment was drawn, is entirely silent as to intent and there is no intent alleged in the indictment.   The act of 1887 was intended to amend the Gen. Stats. on the subject of embezzlement in which an intent is essential.   In statutory offenses there must be an evil intent, though the statute is silent on the subject.   (1 Bishop's Crim. Law Sec. 290.)   Criminal intent is necessary to constitute a crime, and without it crime can not exist.   (*State v. Gardner*, 5 Nev. 377; *State* v. *O'Reilly*, 4 Mo. App. 392.)

II.   The act of 1887 violates Sec. 17 of Art. IV of the constitution.   It is not an independent act and does not purport to repeal any part of an existing law.   It was in every sense amendatory of the then existing definition of embezzlement, but it does not re-enact and publish at length the law it seeks to amend.   (*Smales* v. *White*, 4 Neb. 357; *Earle* v. *Board of Education*, 55 Cal. 489; *Gillispie* v. *City of Pittsburg*, 21 Atl. Rep. 759.)

III.   The objections here made to the indictment were not waived by the failure to demur or to take the objection at the trial or in arrest of judgment.   (*Lemmons* v. *State*, 4 W. Va. 755.) It may be taken advantage of for the first time on appeal. (Mathew's and Garner's Case, 18 Gratt. 989; *State* v. *Simms*, 43 Tex. 521; Wharton on Crim. Prac. and Plead. Sec. 777; Powell on Appellate Proced. 316, 331, 332, 335, 336.)

*J. D. Torreyson*, Attorney General, and *William Woodburn*, for Respondent.

I.   A judgment in a criminal case will not be disturbed on the ground of the insufficiency of the evidence if there is any evidence to support it.   (*State* v. *McGinniss*, 6 Nev. 109; *State*

v. *Glovery*, 10 Nev. 24; *State* v. *Huff*, 11 Nev. 17; *State* v. *Raymond*, 11 Nev. 99; *State* v. *Crozier*, 12 Nev. 300.)

II.　Property may be alleged in an indictment to belong to one who has a special property in it at the time it is stolen or embezzled. (*Mosely* v. *State*, 42 Tex. 78; *Langford* v. *State*, 8 Tex. 116; *State* v. *Nelson*, 11 Nev. 337; *Ex parte Ricord*, 11 Nev. 287; *Riley* v. *State*, 32 Tex. 763.)

III.　The act of 1887 is not an amendatory but is an independent act.　Embezzlement was not a crime at the common law, but it is purely statutory and just what the legislature sees fit to enact.　Every intendment is in favor of the constitutionality of a law.

IV.　The objections that an indictment does not state facts sufficient to constitute a public offense, and that the court had no jurisdiction to try the same, cannot be taken for the first time on appeal. (*People* v. *Dick*, 37 Cal. 277; *People* v. *Shotwell*, 27 Cal. 401; *Fleet* v. *State*, 22 Atl. Rep. 624; *State* v. *Moueton*, 42 La. Ann. 1160; *State* v. *Arthur*, 10 La. Ann. 265.)

By the Court, MURPHY, C. J.:

The defendant was indicted and charged with having embezzled the sum of one thousand eight hundred and seventy-seven dollars and fifty-five cents, money he had received as agent of Wells, Fargo & Co. at Virginia City, Storey county, Nevada, from one John McGrath, to be by the said John Trolson, as such agent of Wells, Fargo & Co., forwarded to Richard Mercer, at Los Angeles, state of California; that instead of forwarding the same, as was his duty so to do, by the nature of his employment, he appropriated the said sum of money to his own use.　He was tried, convicted and sentenced to imprisonment in the state prison for five years.

Errors are alleged in this court, for the first time, on motion in arrest of judgment.　It is contended that the indictment is deficient in matters of substance in not charging that the defendant appropriated the money "wilfully, feloniously and with intent to steal the same."　Neither one of these words are used in the indictment.　It is not disputed but what the agency is sufficiently alleged, and that he received the money as such agent of Wells, Fargo & Co., and in the regular course of his employment, and that it had never been sent by Trolson to the party for whom it was intended.

The charging portion of the indictment complained of reads as follows: "That on or about the said first day of December, A. D. 1892, and before the finding of this indictment, the said John Trolson, having said money, and coins, and each of them in his possession as such agent of said corporation as aforesaid, and being then and there intrusted therewith as aforesaid, for the purpose aforesaid and for no other purpose, did appropriate the said sum of money and the said coins and each of them to his own use, for his own benefit, and did appropriate the same and the whole thereof in a manner and for purposes other than that for which the same were intrusted; and then and there did use the said sum of money, and the said coins, and the whole thereof, and each of said coins for his own benefit, and did use the same, and the whole thereof in a manner and for purposes other than that for which the same were instrusted as aforesaid; and thereby did embezzle said sum of money, and said coins, and each of them"—all of which is contrary to the form of the statute. The indictment shows who placed the money in the defendant's hands, the purposes for which it was intrusted to him and that, instead of carrying out said trust, he did embezzle the same.

Embezzlement is not an offense at common law, but was created by statute; therefore, in deciding the question submitted, we must be governed by the statute of our own state. The statute under consideration reads as follows: "Any person, or any agent, manager or clerk of any person, corporation, association or partnership, with whom any money, property or effects shall have been deposited or intrusted, who shall use or appropriate such money, property or effects, or any part thereof, in any manner or for any other purpose than that for which the same was deposited or intrusted, shall be guilty of embezzlement."

In setting out a statutory offense it is sufficient to describe it in the words of the statute, with a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to show that the statutory offense has been committed by the party therein named, and to inform him as to what is intended. (*State* v. *Logan*, 1 Nev. 510; *U. S.* v. *Gooding*, 12 Wheat. 4*i*2; *People* v. *Gray*, 66 Cal. 271; *People* v. *Tomlinson*, 66 Cal. 345; *Com.* v. *Bennett*, 118 Mass. 451; *Golden* v. *State*, 22 Tex. App. 2; *Crump* v. *State*, 23 Tex. App. 616; *Wood*

v. *State*, 47 Ark. 492; *Lowenthal* v. *State*, 32 Ala. 589: *State* v. *Wolff*, 34 La. Ann. 1153; *Huffman* v. *State*, 8 South. Rep. 28; *People* v. *Hennessey*, 15 Wend. 150; 1 Whart. Crim. Law, 1061.) "The cases are few and exceptional," said Foster, J., in *Com.* v. *Raymond*, 97 Mass. 569, "in which an indictment which follows the words of the statute will be held to be insufficient."

The word "embezzle" has a well defined meaning. In the Century Dictionary "embezzle" is defined as the act "to steal slyly; purloin; filch; make off with; to appropriate fraudulently to one's own use, as what is intrusted to one's care; apply to one's private use by a breach of trust, as a clerk or servant who misapplies his master's money or valuables." Webster's: "To appropriate fraudulently to one's own use, as property intrusted to one's care; to apply to one's private use by a breach of trust, as to embezzle public money." Wharton's Law Dictionary: "Larceny by clerk, or servant, or agent; the act of appropriating to himself that which he receives in trust for another." Anderson's Law Dictionary: "Appropriation to one's own use of anything belonging to another, whether rightfully or wrongfully in the possession of the taker; theft." "Embezzlement is a sort of a statutory larceny committed by servants and other like persons where there is a trust reposed, and therefore no trespass, so that the act would not be larceny at the common law." (1 Bish. Crim. Law. Sec. 567.)

As hereinbefore stated, embezzlement is a crime defined by statute, and it will not be disputed but what it is within the power of the legislature to declare what acts would constitute the crime and fix the punishment thereof. One of the elements that enters into the statutory definition of embezzlement is the fiduciary or confidential relation existing between the employer and the employe; and this is especially true with regard to agents of such corporations as Wells, Fargo & Co., which was organized for the purpose of and is doing a large express business, in transmitting money and other valuables to different parts of the country, and the work connected therewith must necessarily be done by and through confidential clerks and agents, who are intrusted with the duties of receiving, forwarding, and the care and custody of large sums of money, valuables and property so deposited and intrusted to said corporation, through its clerks and agents, for shipment, and in which said corporation has a special ownership and is held responsi-

ble for the loss or miscarriage thereof after it is once received and receipted for by its authorized agents.

The legislature of 1887 had in view the nature of the business transacted by corporations organized for banking and express companies, milling and mining companies, companies and individuals engaged in stock brokerage. All, or nearly all, of the business had to be done by and through agents, clerks and employes, who necessarily from the nature of their employment were intrusted with large sums of money, valuable shares of stock and bullion. The legislature was also aware that large sums of money and valuable shares of stock, that had been intrusted to agents for certain purposes, were appropriated and used by such agents, not with the intention of stealing the same, and depriving the owner of the use thereof for all times, but with the hope and expectation of being able to save themselves from financial ruin. If prices in the stock board turned their way, they were all right, and the money and stocks were replaced and the owners thereof knew nothing of the matter; but, if the reverse should happen, they were bankrupt and defaulters.

Take the case under consideration for an example. The defendant testified that he had been in the employment of Wells, Fargo & Co. some sixteen years; that after he became a married man, on account of sickness in his family the wages he received were not sufficient to meet his expenses; that he commenced to use money intrusted to him in small sums; that he speculated in stocks; that he borrowed money at different times to replace the amounts he had taken; that his employer knew nothing of these appropriations; finally, on the 1st day of December, 1892, he was some two thousand dollars short in his accounts. When he received the commission mentioned in the indictment he failed to enter it on the book of the office, or to forward the same to the party for whom it was intended, and the company knew nothing of the matter until it was called upon to pay, and did pay, the sum charged in the indictment. He also testified that he never intended to steal the money, but always intended to repay the same and would have done so if he had been given time. (State v. Pratt, 11 S. W. Rep. 978.) It was to cover cases of this kind that the legislature left out the words "wilfully, unlawfully and with intent to steal," and the word embezzled contains within itself the charge that the defendant ap-

propriated the money to his own use, and sufficiently designates the crime intended to be charged. (*State* v. *Wolff*, 34 La. Ann. 1153.)

The counsel for appellant contends that "in every crime or public offense there must be a joint operation of act and intent, or criminal negligence;" and that the words "with intent to steal" should have been set forth in the indictment. The statute under consideration does not make the criminal intent an element of the offense further than is necessarily included in the words "who shall use or appropriate such money, property or effects or any part thereof, in any manner or for any other purpose than that for which the same was deposited or intrusted shall be guilty of embezzlement." The language of the statute which is copied into the indictment, is clear and plainly imports that the defendant did appropriate the money to his own use with the intention of depriving the owner of the use thereof; and it is also clear to our minds that neither the defendant nor his counsel could have been misled as to the offense charged. The intent which is mentioned in the text books on criminal law as essential to constitute a crime is not necessarily an evil or wrongful intent, beyond that which is involved in the prohibited act. Whatever one voluntarily does he of course intends; and whenever the statute has made that act criminal, the party voluntarily doing the prohibited act is chargeable with the criminal intent, and the statute of 1887 "does not make it necessary to allege that the act was knowingly done, as a constituent part of the crime." (*Com.* v. *Elwell*, 2 Metc. 190; Bish. Stat. Crimes, Sec. 250.) Bishop on Criminal Procedure (volume 1, Sec. 523) says: "It is perhaps safe to say that in all cases where a statute creates an offense, and mentions some intent as an element therein, the indictment must follow these statutes in this particular, and specify the intent. On the other hand, as a general proposition, if the statute is silent concerning the intent there need be no intent alleged in the indictment." "So in regard to frequent attempts which have been made to exonerate individuals charged with disobedience to penal laws, on the ground of good faith or error of judgment; it has been held that no excuse of this kind will avail against the peremptory words of a statute imposing a penalty. If the prohibited act has been done, the penalty must be paid." The offense consists in the violation of

the law, not in the intent or motive by which the party was actuated. (Sedg. St. Const. 80, and authorities there cited.)

In the case of *State* v. *Combs,* 27 Pac. Rep. 818, it is said: "The second objection—that the information contains no allegation of intent—cannot be sustained. The charge as stated includes the evil intent of wrongfully appropriating money intrusted to him by Fearn for a special purpose to his own use, and sufficiently characterizes the intent with which the offense was committed." In *State* v. *Noland,* 19 S. W. Rep. 717, the court said: "It is next objected that the indictment is insufficient for failure to aver the intent with which the defendant converted the money to his own use. * * * It has generally been ruled under similar statutes that an indictment substantially charging the crime in the terms of the statute is sufficient."

In the case of *Leonard* v. *State,* 7 Tex. App. 435, it is said: "It is no part of the description of the offense of embezzlement, as in theft, that it was taken with the intent to deprive the owners of the property or its value, or to appropriate it to the benefit of the taker. The indictment alleges the property to have been in the possession of the defendant, which would to some extent excuse the pleader from a more minute description; still we are of the opinion it was sufficiently described, for the purpose of this prosecution, to apprise the defendant as to what he was charged with." In *Halsted* v. *State,* 41 N. J. Law, 589, Beasley, C. J., speaking for the court, said: "Nothing in law is more incontestible than that, with respect to statutory offenses, the maxim that crime proceeds only from a criminal mind does not universally apply. The cases are almost without number that vouch for this." The case of *State* v. *Hopkins,* 56 Vt. 260, was an indictment for embezzlement, and in passing upon the question of intent the court said: "The remaining question in respect to the charge is the one relating to the intent of the respondent in doing the alleged act. Was it necessary that he should have acted fraudulently and feloniously, that he should have the intent to steal, that he should have a heart void of social duty and been fatally bent on mischief? We think not."

Without the citation of further authorities, which are numerous, we are of the opinion that there is no defect in the indictment. It is drawn in such a manner as to bring the de-

fendant within the provisions of the statute; the nature of his employment is set out in ordinary and concise language; that he received the money in the course of his employment; the ownership of the money, together with his duty in relation thereto; and that he appropriated the same to his own use, and embezzled the same—is fully, directly and expressly alleged, without uncertainty or ambiguity; and courts will not interpolate into a statute a corrupt motive as an ingredient of the offense of embezzlement, for when an act is prohibited in express terms by the statute, such prohibition cannot be contracted so as to embrace only such persons as do such act with intent to steal the money or property; nor is it in the province of the court to say whether this law is too rigorous or not; that is for the legislative department to determine; courts must declare the law as they find it.

The intent with which the party appropriates the money or property to his own use is a question of fact, to be determined from the evidence in the particular case. (*People* v. *De Lay*, 22 Pac. Rep. 90; *People* v. *Galland*, 55 Mich. 628.) In the case under consideration the question of intent was submitted to the jury in the instructions of the court, which read as follows: "The next question is that it must appear from the evidence that the defendant appropriated this money or some portion of it to his own purpose, with the intent to deprive Wells, Fargo & Co. of it; and that fact must be shown beyond a reasonable doubt. Therefore, if you believe from the evidence that the defendant, John Trolson, received this sum of money, and that he received it as the agent of Wells, Fargo & Co., for the purpose of transmission to Richard Mercer at Los Angeles, and that instead of transmitting it as he should have done, that he diverted it and appropriated it to his own use, and did use, and did so with the purpose and intent of using it, that fact would constitute the crime of embezzlement as defined by the statute, and you should convict the defendant. If, on the other hand, you should believe the statement made by the defendant, that when he received this money he deposited it in the safe, and although the facts be that he did not transmit it as was his duty to do, but that he left it in the safe, and did not use it, he can not be held guilty. The offense of embezzlement consists of two things—the act of taking the money, and the intention with which it is taken. If you believe his statement that he received

this money and did not take or use it for his own purpose, or for any other purpose whatever, or any part of it, he must be acquitted." From the foregoing it is seen that the question of intent with which the defendant appropriated the money to his own use was submitted to the jury with the evidence in the case, and the law has been complied with.

Counsel for appellant contends that the statute of 1887, under which the defendant was indicted, is unconstitutional, by reason of its non-conformity to section 17, art. 4, of the constitution, which reads: "Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only, but in such case the act as revised, or section as amended, shall be re-enacted and published at length." The law embraces but one subject, and matter properly connected therewith, to-wit: Defining the acts which shall constitute the crime of embezzlement, and fixing the punishment. He further argues that it cannot be determined from the reading of the title whether it was intended as an amendment to sections 4634 and 4635, Gen. Stat., or a supplemental act; that there is no repealing clause.

We agree with the counsel that if the act of 1887 was an attempted amendment of the above sections, as such it is an absolute failure; and we are confident it was not intended as a supplemental act. Nor is it repugnant to, or in conflict with, either one of the above-mentioned sections, and does not repeal directly or by implication the former statute defining the crime of embezzlement, but is an independent statute complete within itself. The legislature has, in section 1, in clear and unmistakable language set forth fully what acts shall constitute the crime. Section 2 fixes the punishment for violation of the provisions of section 1. It is a familiar doctrine that repeals of statutes by implication are not favored. (*People* v. *Gustin*, 57 Mich. 408, and authorities therein cited.) The court said " that the question of repeal is largely one of intent; and if the two statutes can stand, and both have effect, they must be allowed to do so." *Cooley on Constitutional Limitations* (page 182) says: " But repeals by implication are not favored; and the repugnancy between two statutes should be very clear to warrant a court in holding that the latter in time repeals the

other, when it does not in terms purport to do so." Sedgwick on Construction of Statutory and Constitutional Law (page 354) says: " But it is only in case of irreconcilable repugnancy that this rule applies; it gives way to the fundamental principle, that the intent of the legislature is to govern.  * * *  The general rule is conceded to be that where the two statutes contain repugnant provisions, the one last signed by the governor is a repeal of one previously signed; but this is so merely because it is presumed to be so intended by the law-making power. Where the intention is otherwise, and that intention is manifest upon the face of either enactment, the plain meaning of the legislative power thus manifested is the paramount rule of construction. It is no part of the duty of the judiciary to resort to technical subtleties to defeat the obvious purposes of the legislative power in a matter over which that power has a constitutional right to control." Where there are two acts on the same subject, the rule is to give effect to both if possible. (*State* v. *Archibald*, 45 N. W. Rep. 607; Bish. St. Crimes, Sec. 155, 156.)

The act of 1887 is in no wise repugnant to nor conflicts with the former laws in relation to embezzlement. In our opinion the prosecuting officer may draw the indictment under the act of 1887 or 1879, as the facts in the case might seem to require, and was so intended by the legislature. The title of the act of 1887 reads: " An act to further define and punish embezzlement." We think the title is sufficient, and not misleading. The word " further " can be omitted, and yet the act will have a good title. It is a well-established rule of construction that if the act is broader than the title, that part of the act indicated by the title will stand, while that portion of the act not indicated by the title must be rejected. Such being the case the reverse must follow, and where the title is broader than the act, that portion of the title which has no legitimate connection with the body of the act must be held to be surplusage and disregarded.

It is argued that the instructions given by the court were inconsistent with one another and misleading. The whole charge to a jury must be taken together and considered as an entirety, and all that is required is that the law be clearly stated in accordance with the facts in the case, that the jury may not be misled; and when the instructions state the law they

must be sustained. We have carefully examined the instructions in the case, and considered together, they are a full, clear and correct exposition of the law applicable to the facts in the case, and the defendant was not prejudiced thereby.

The verdict of the jury is supported by the evidence. True, it is that the defendant testified that he put the money in the safe, and that amount and more was found therein. He admitted that he had taken and used money for speculative purposes which had been intrusted to him as agent of Wells, Fargo & Co.; that it had been going on for three years; that on the date the money was paid by McGrath to him to be forwarded to Mercer he was in the neighborhood of two thousand dollars short in his accounts with Wells, Fargo & Co. It was shown at the trial that he failed to make an entry on the books of the company of the receipt of the money, and it was conceded that it had never been sent to Mercer by Trolson. Therefore, when the defendant received that money, and failed to enter an account thereof in the books of the company, and placed the money in the safe to make up his deficits in other accounts, he diverted the said sum of money from the uses and purposes for which it was intended, and converted the same to his own use, and by so doing he violated the law. The mere fact that there was a large amount of money in the safe, and that the money the defendant received from McGrath was a part of the larger amount, constituted no defense when it was shown that he was two thousand dollars short in his accounts; that he made no entry in the books, and failed to send the money to Mercer, as was his duty to do, were all facts and circumstances to be submitted to the jury, from which they could determine the intent of the defendant in appropriating the money in the manner in which he did.

We cannot close this opinion in more apt language than that used by the supreme court of Missouri in the case of *State* v. *Manley,* 17 S. W. Rep. 801, wherein it is said: "The object and purpose of the statute was to prohibit by severe punishment the conversion of money received by virtue of official positions and certain fiduciary relations named therein. It was enacted with a view to prevent the growing tendency of those intrusted with public moneys and trust funds to speculate for their own personal aggrandizement. To accomplish this purpose it was deemed best to say to officers and trustees: You shall not con-

vert to your own use in any manner whatever the moneys you have received by virtue of your public trust. Your good intentions will not restore these moneys after your investment has proved disastrous. It matters not that in many cases you honestly think you can safely invest the public funds, and will be able to restore them when called for. They were not placed in your hands for such a purpose. To save you from dishonor, your sureties from bankruptcy and loss, we will deter you from attempting such a proceeding. Experience justified the legislature in coming to this conclusion. Observation had taught that many well-meaning men had been lured to their own disgrace and ruin by converting the trust funds in their hands to their own private ends, and having lost, attempted to cover up their property and make good the trust funds by false charges and vouchers."

How aptly the above covers the case under consideration may be summed up in a very few words. The defendant was compelled to pay the sum of one hundred and seventy-five dollars by reason of his having delivered a package of books to a party who was not entitled to receive them. He says: "I was unable to make this payment out of my salary and meet my other expenses. I used money coming into my hands to speculate on in hopes to make my loss good." He took the money that had been given to him by Peter for a certain purpose, to pay the amount he had heretofore used for his own benefit, out of the money he had received from Paul. The long looked for profits on his investments did not come to hand. On or about the 1st day of December, 1892, he had appropriated to his own use the sum of two thousand dollars; he says, "taken at different times and in small amounts." About this time he received the Mercer money from McGrath, and instead of sending it to Mercer, as was his duty so to do, he placed it in the safe to cover his former peculations, and with the hope that he might be able to raise money from some source to meet the Mercer demand before he would be called upon for the money; but such was not to be the case. Mercer, not receiving his money, made a demand on the home office and the amount was paid and the defendant exposed. The offense committed by the defendant comes within the words of the statute; also within its reason and spirit, and the mischief it was intended to remedy.

The judgment and order appealed from are affirmed.

BIGELOW, J., concurring:

To what has been said by the chief justice, I desire to add:

1. The objection to the indictment that it does not state facts sufficient to constitute a public offense is not waived by a failure to make the point in the district court either by demurrer or upon motion in arrest of judgment. Such an objection may be taken for the first time in the appellate court. (*State* v. *Mack,* 20 Or. 234; *Lemons* v. *State,* 4 W. Va. 755; *State* v. *Sims,* 43 Tex. 521.)

2. The indictment follows the language of the statute of 1887, p. 81, and under that statute is certainly sufficient, as is abundantly shown by the preceding opinion. The only question then, is whether that is a valid and constitutional law. It is objected that it is not, because it is virtually an amendment of sections 4634, 4635, Gen. Stat., which under the constitution can only be amended by re-enacting them in full, and a number of Nebraska cases (*Smails* v. *White,* 4 Neb. 357; *Sovereign* v. *State,* 7 Neb. 410; *Stricklett* v. *State,* 48 N. W. Rep. 820; and *Smith* v. *State,* 52 N. W. Rep. 572) are cited as supporting that view. It seems, however, that the courts of that state stand alone upon that question, and while their position may be the more correct viewed from a theoretical and philosophical standpoint, in my judgment the weight of authority and the more practical reason is with those that hold the general rule that the clause of the constitution under consideration does not apply unless the subsequent statute is, in terms as well as in effect, an amendment of the preceding statute. Speaking of the constitutional provision that an amended section of a statute must be re-enacted and published at length, Judge Cooley says: "It should be observed that statutes which amend others by implication are not within this provision; and it is not essential that they even refer to the acts or sections which by implication they amend." (Const. Lim. 182.) This statement is well supported by the adjudged cases of many states.

A statute is frequently so interwoven with others, and directly or indirectly modifies or amends so many others, and the rule contended for is itself so uncertain and indefinite, and in its nature incapable of reasonably fixed limits of application, that, as it seems to me, its adoption would lead to more uncertainty and confusion in the law than it would eliminate.

Therefore, if we admit the position of counsel that the act of 1887 is an amendment of the previous statutes concerning embezzlement, it does not follow that the act is unconstitutional. I concur in the affirmance of the judgment, and of the order refusing a new trial.