# STATE *v.* MONAHAN
## No. 2725
October 5, 1926.                    249 P. 566.

1. CRIMINAL LAW—PREJUDICE CURED.
   Any prejudice resulting to defendant because after jury had been accepted and sworn district attorney was permitted to indorse on information names of witnesses known to district attorney before trial, in violation of 3 Rev. Laws, p. 3399, sec. 2, *held* cured by granting defendant's motion for continuance to prepare to meet testimony of additional witnesses.

2. CRIMINAL LAW—NAMES OF WITNESSES ON INFORMATION.
   Under 3 Rev. Laws, p. 3399, sec. 2, indorsement of names of witnesses on information is largely a matter of discretion with court, and, in absence of showing of abuse, or that some substantial injury had resulted to accused, an order permitting such indorsement even after trial has commenced does not constitute of itself reversible error.

3. EMBEZZLEMENT—LIMITATION.
   Rev. Laws, sec. 6653, providing that conversion by bailee, agent, etc., of money, goods, or property intrusted to his possession shall constitute embezzlement, is limited to cases in which there is a relation of trust and confidence.

4. EMBEZZLEMENT—AGENT INCLUDES BROKER.
   Rev. Laws, sec. 6653, providing that any "agent," etc., shall be guilty of embezzlement who converts the money, goods, or property of another to his own use, includes brokers, though they are not named therein.

5. EMBEZZLEMENT—TRANSACTION CONSTITUTING.
   Transaction in which broker was ordered to buy stock, and received part payment, and subsequently payment in full, but never delivered the stock, but gave various and conflicting excuses for his failure to do so, *held* not to create relation of "debtor and creditor," but to constitute "embezzlement" of the money within Rev. Laws, sec. 6653.

6. EMBEZZLEMENT—INTENT.
   Where a deliberate diversion by a broker of money transmitted to him by his principal is shown, it requires but slight evidence to satisfy jurors as to existence of felonious or criminal intent.

7. EMBEZZLEMENT—BURDEN OF PROOF.
   Where prosecution in trial of broker for embezzlement made a prima facie case, defendant was required to adduce evidence in denial or explanation of incriminating circumstances.

8. CRIMINAL LAW—EVIDENCE OF SIMILAR TRANSACTIONS.
   In prosecution of broker for embezzlement, admitting evidence of financial circumstances of defendant and of similar transactions with other customers by him at or immediately before commission of the offense *held* not erroneous, where jury were fully instructed as to purpose for which evidence could be considered.

C. J.–CYC. REFERENCES
BROKERS—9 C. J. sec. 1, p. 509, n. 2; sec. 16, p. 515, n. 62.
CRIMINAL LAW—16 C. J. sec. 1159, p. 596, n. 59; p. 597, n. 60, 62, 63, 64; sec. 2027, p. 796, n. 55; p. 797, n. 60; sec. 2157, p. 856, n. 23; 17 C. J. sec. 3613, p. 281, n. 15 (new).
EMBEZZLEMENT—20 C. J. sec. 12, p. 422, n. 91, 93; sec. 30, p. 441, n. 12; sec. 36, p. 445, n. 48; p. 447, n. 52; sec. 78, p. 482, n. 34; sec. 83, p. 488, n. 66.

APPEAL from Fifth Judicial District Court, Nye County; *Frank T. Dunn,* Judge.

J. E. Monahan was convicted of embezzlement, and he appeals. **Affirmed.**

*McCarran & Mashburn,* for Appellant:

Whole deal from beginning to end was marginal stock gambling transaction. Receipt shows stock, not money, was to be delivered to Carden. Monahan, as he had right to do, mingled Carden's money with his own. It was general, not special deposit, to be used by Monahan generally in his business. Failure to return deposit was not embezzlement. Relation established was that of debtor and creditor. Fiduciary relations did not exist. People v. Thomas, 82 N. Y. S. 219; Lamprecht v. State, 95 NE. 656; 9 R. C. L. 1274.

Criminal courts should not be called upon to act as collection agencies in civil suits. People v. Paine, 72 N. Y. S. 3; People v. Flynn, 118 N. Y. S. 534.

Indictment charges embezzlement of money, not stock. Proof of embezzlement of money cannot be sustained by proof of embezzlement of other property. People v. Caselton, 164 SW. 495; People v. Peck, 253 SW. 1021.

Broker who invests money in stock as directed cannot be convicted of embezzlement of such money, even upon proof of fraudulent conversion of that stock. People v. Peipsic, 62 P. 311.

There must be proof that conversion was with intent to steal. State v. Rothrock, 45 Nev. 214.

Failure to return money without proof of fraudulent appropriation is not sufficient to constitute crime. Where no time limit is fixed for delivery, demand is necessary. Demand was made for stock, not money.

Monahan was not bound to deliver stock until margin period had expired. State v. Weber, 31 Nev. 385.

Names of witnesses should have been indorsed on information as early as possible. Stats. 1913, 294. By adding names after jury was sworn, prosecutor deprived defendant of knowledge of witnesses against him. Sweenie. v. State, 80 NW. 815; People v. Hall, 12 NW. 665; People v. Quick, 25 NW. 302.

Evidence of vague and uncertain character offered for purpose of proving defendant had been guilty of similar offenses should never be admitted under any pretense whatever. Baxter v. State, 110 NE. 456; People v. Glass, 112 P. 281.

*M. A. Diskin,* Attorney-General, *Wm. J. Forman,* Deputy Attorney-General, and *Joseph T. Murphy,* District Attorney, for Respondent:

This action was brought under Rev. Laws, 6653, providing that any bailee of money who converts it to his own use with intent to steal is guilty of embezzlement.

Transaction ceased to be marginal one when Carden paid defendant full amount for purpose of purchasing and delivering stock to him. Facts do not bring case within rule of People v. Thomas, 82 N. Y. S. 218.

Money deposited was not used for proper purpose, but was used by defendant to pay his own overdraft. Conviction for embezzlement was upheld under very similar circumstances in People v. Meadows, 121 N. Y. S. 17. People v. Lorden, 217 P. 117.

Relation of debtor and creditor did not exist. It is doubtful if it would be defense, even if it existed, because defendant's civil liability would not be defense to violation of statute. Goldman on Stock Exchange Laws, 109.

Monahan never bought stock. It would be foolish to charge him with embezzling something he never procured.

Intent is question of fact to be determined from evidence. State v. Trolson, 21 Nev. 419.

In State v. Weber, 31 Nev. 385, cited by appellant, there was no proof that defendant ever appropriated money.

Evidence that defendant was in straightened circumstances tended to show temptation or motive and was admissible. 15 Cyc. 592; Dimmick v. U. S., 135 Fed. 257; 1 Wigmore, 475.

Evidence of other acts of embezzlement at about same time is relevant to show intent, even though such evidence tends to prove other distinct offenses. Underhill (3d ed.), sec. 447.

Fact that evidence introduced to show motive also shows guilt of totally dissimilar offense does not justify its rejection. Underhill (3d ed.), sec. 154.

Names of witnesses objected to, and materiality of their testimony, were not known when information was filed. Names of such witnesses may be indorsed on information before trial. 3 Rev. Laws, pp. 3399, 3412. Late indorsement might entitle defendant to continuance, but not reversal. State v. Kemplin, 134 NW. 275. Some courts hold indorsement may be made even after trial has started. Gore v. People, 44 NE. 500; State v. Price, 40 P. 1000.

No demand is necessary for particular article alleged to have been embezzled. 20 C. J. sec. 17; Underhill (3d ed.), sec. 448.

## OPINION

By the Court, SANDERS, J.:

The defendant, a mining stockbroker, was convicted for embezzling $600, the money of one H. W. Carden. He appeals from the judgment of conviction and from an order denying his motion for a new trial.

The information upon which the defendant was tried reads as follows:

"That he, the said J. E. Monahan, while engaged in the business of and acting as a stockbroker in the town of Tonopah, Nye County, Nevada, had placed into his possession, and was intrusted with, property and money

having a geater value than $50, to wit, $200 currency, lawful money of the United States, together with two bank checks drawn on the Lander County Bank, of Austin, Nevada, each of the said checks being made payable to the said J. E. Monahan in the sum of $200, and signed by one H. W. Carden; the said H. W. Carden having on deposit with the said bank the said sums of money at the said time, and the said checks were properly indorsed. The said checks were in due course of business deposited by the said J. E. Monahan with the Nevada First National Bank of Tonopah, Nevada, to the credit of the account of the said J. E. Monahan, and in due course payment made thereon to the said Nevada First National Bank by the Lander County Bank, upon which the said checks were drawn. The total value of the said lawful money of the United States, together with the said checks, was $600.

"The aforesaid money and checks were placed in his, the said J. E. Monahan's, possession, and intrusted to him by H. W. Carden of Round Mountain, Nye County, Nevada, the lawful and rightful owner of the said checks and money, for the sole purpose of purchasing 5,000 shares of White Caps Mining Company stock, which stock was to be purchased at the market price of 12 cents per share, and that he, the said J. E. Monahan, was intrusted with the aforedescribed money and checks of a value of $50, to wit, $600 for the sole and only purpose of purchasing the said mining stock and turning the said stock over to him, the said H. W. Carden, in the regular course of business, as soon as he, the said J. E. Monahan, acting then and there as a stockbroker, should purchase the said stock; and that he, the said J. E. Monahan, was not intrusted with the said property and money aforedescribed for any other purpose whatsoever, and that he, the said J. E. Monahan, did represent to him, the said H. W. Carden, that he had purchased the said stock, when in truth and in fact he, the said J. E. Monahan, knew that he had not purchased the said stock, and that he, the said J. E. Monahan, did convert the said money and checks in the sum of $600

to his own use and benefit, and appropriate the same with an intent to steal the same and to defraud the lawful and rightful owner, H. W. Carden, thereof, and did dispose of the same for his, the said J. E. Monahan's, own use and benefit."

The undisputed facts, omitting details, are as follows:

At the time of the commission of the alleged offense the defendant was engaged in a general brokerage business in Tonopah, Nye County, Nevada, under the name of the Divide Brokerage Company. On the 9th day of June, 1925, H. W. Carden, who lived at Round Mountain in said county, went to the defendant's place of business, and gave to defendant an order in writing to buy 5,000 shares of the capital stock of the White Caps Mining Company at 12 cents per share. The order is as follows:

"6/9—25.   Buy 5,000 W Caps @ 12 B 60.   H. W. Carden."

At the request of the defendant, Carden gave him the sum of $300 to use on the purchase of said stock, and the defendant, agreeing to make the purchase, received the money for that specific purpose. Carden subsequently visited the place of business of the defendant, and upon inquiry was told by the defendant that the 5,000 shares of stock had been purchased in San Francisco. The stock of the White Caps Mining Company was a listed stock on the San Francisco mining stock exchange, and was actively dealt in on the 9th day of June, 1925, at 12 cents per share. On the 22d day of June, 1925, H. W. Carden again visited the place of business of the defendant, and asked that, if he were to pay the balance in full upon the stock, would the defendant deliver the stock to him immediately? The defendant replied, "Absolutely," just as quickly as it could be shipped from Frisco. Thereupon Carden, relying upon the defendant's representation that he had purchased the stock, gave to the defendant $300 to pay for the stock in full, with the understanding that the stock would be delivered without delay, and the defendant gave Carden this receipt:

"6/22, 1925.   Received from H. W. Carden three hundred dollars in full bot 5,000 W Caps @ 12 cents stock due you $300.00.

"J. E. Monahan."

Thereafter the complainant Carden made frequent demands upon the defendant for the stock, but each demand was met with various and conflicting excuses. On the 9th day of July, 1925, Carden visited the office of the defendant, and pressed him for the delivery of the stock.   The defendant represented that the stock would be mailed to complainant at Round Mountain on the next Monday, and that it would be no later than the following Thursday in arriving there.   Carden said, "That will do," and left the office in a disgruntled frame of mind.   Shortly thereafter the defendant called Carden back into his office, and told him that he had borrowed 1,500 shares of White Caps stock which he could have upon receipting therefor.   Carden accepted the 1,500 shares and gave this receipt:

"7—9—1925.   Received from J. E. Monahan fifteen hundred shrs dollars Wh Caps Bal due HWC 3,500 fully paid.   H. W. Carden."

On the same day, to wit, the 9th of July, 1925, Carden went to the office of Joseph T. Murphy, district attorney of Nye County, and laid before him the entire transaction between him and the defendant, and on the advice of Mr. Murphy the following letter was addressed to the defendant:

"Tonopah, Nevada, July 9, 1925.

"Mr. J. E. Monahan, Tonopah, Nevada—Dear Sir: You are hereby notified that the undersigned demands the immediate surrender of thirty-five hundred (3,500) shares of White Caps Mining Company stock, due the undersigned by you, as evidenced by your receipt of June 22, 1925.   And you are hereby notified that between this date and the date of the surrender of the thirty-five hundred (3,500) shares of stock, the undersigned will hold you liable for the highest market price which the stock reaches in the meantime.   H. W. Carden."

Carden again visited the office of Mr. Murphy, and a criminal complaint was filed in the justice court of Tonopah township charging the defendant with the embezzlement of $600. The date of the filing of the complaint is not given, but it appears affirmatively from the transcript that such proceedings were had thereon as resulted in the filing of the foregoing information in the court below on the 1st day of August, 1925, upon which was indorsed the names of three witnesses. The case was set for trial on the 14th day of October, 1925.

Upon the trial the prosecution, over the defendant's objections, was permitted to adduce evidence of the financial circumstances of the defendant and evidence of similar transactions with other customers by the accused at or immediately before the time of the commission of the alleged offense. Upon the close of the evidence for the prosecution the defendant moved the court to advise the jury to acquit the defendant, upon the ground that the facts proved by the prosecution were not sufficient to establish the guilt of the defendant of embezzlement. The motion was denied. The defendant introduced no evidence, and rested his case upon instructions given at the request of both the state and the defendant. The jury returned this verdict:

"We, the jury in the above-entitled cause, find the defendant, J. E. Monahan, guilty as charged in the information."

We have very carefully considered the admitted facts, and the result to which we have arrived will be stated after disposing of a preliminary question of practice arising under the statute in reference to prosecutions for crimes by information. Statutes 1913, p. 293; 3 Revised Laws, p. 3399.

Section 2 of said act provides as follows:

"All information shall be filed in the court having jurisdiction of the offenses specified therein, by the district attorney of the proper county as informant, and his name shall be subscribed thereto by himself or by his deputy. He shall indorse thereon the names of such witnesses as are known to him at the time of filing the

same, and shall also indorse upon such information the names of such other witnesses as may become known to him before the trial at such time as the court may, by rule or otherwise prescribe; but this shall not preclude the calling of witnesses whose names, or the materiality of whose testimony are first learned by the district attorney upon the trial."

1, 2.  The transcript shows that, after the jury had been accepted and sworn to try the case, the district attorney was permitted, over the defendant's objections, to indorse on the information the names of twenty-four witnesses known to the district attorney before the trial. The defendant insists that the indorsement was in violation of the statute, deprived him of a substantial right, and was prejudicial and reversible error. Upon motion of the defendant, the case was continued for a period of three days to enable the defendant to prepare to meet the testimony of the additional witnesses. If any prejudice resulted from the indorsement, it was cured by the granting of the defendant's motion for a continuance. The weight of authority is to the effect that under statutes such as ours the indorsement of names of witnesses upon an information is largely a matter of discretion with the court; and, in the absence of a showing of abuse, or that some substantial injury has resulted to the accused, an order permitting such indorsement, even after the trial has commenced, does not constitute of itself reversible error. 16 Corpus Juris, p. 796, sec. 2027.

The delay, inconvenience, and expense incident to the continuance of this case in the midst of trial should impress upon district attorneys the necessity of indorsing the names of prosecuting witnesses known to them on informations before trial. Had the trial court in this instance forced the defendant to trial without giving him sufficient time to inquire as to the character and credibility of the witnesses whose names were indorsed on the information after the trial had begun, and to prepare to meet their testimony, it would probably have been an abuse of discretion, but in the present state of

the record we cannot say that the indorsement violated or prejudiced any of the defendant's rights. The questions raised on the merits of the case require a construction and application of the statute upon which the information is based.

"The principles of the common law not being found adequate to protect general owners against the fraudulent conversion of property by persons standing in certain fiduciary relations to those who were the subject of their peculations, certain statutes have been enacted, * * * creating new criminal offenses and annexing to them their proper punishments. The consequence is, therefore, that many acts which formerly were denominated mere breaches of trust, and subjected the party to a civil action only, have now become cognizable before our criminal courts, as offenses against the commonwealth." Com. v. Stearns, 2 Metc. (Mass.) 343.

Section 6653, Rev. Laws, provides as follows:

"Any bailee of any money, goods or property, who shall convert the same to his own use, with intent to steal the same or to defraud the owner or owners thereof and any agent, manager or clerk of any person, corporation, association or partnership, or any person with whom any money, property or effects shall have been deposited or entrusted, who shall use or appropriate such money, property or effects or any part thereof in any manner or for any other purpose than that for which the same was deposited or entrusted, shall be guilty of embezzlement, and shall be punished in the manner prescribed by law for the stealing or larceny of property of the kind and name of the money, goods, property or effects so taken, converted, stolen, used or appropriated. The term bailee, as used in this section, shall be construed to include and mean all persons with whom any money, goods, or property has been deposited, and all persons to whom any goods or property has been loaned or hired, and all persons to whom any goods or property shall be delivered, for any purpose whatsoever, and all persons who shall, either as agent, collector, or servant, be empowered, authorized, or entrusted to carry, collect,

or receive any money, goods or property of another; and any use of said money, goods, or property by any bailee thereof, other than that for which the same was borrowed, hired, deposited, carried, received, or collected, shall be prima facie evidence of conversion and of intent to steal the same and defraud the owner or owners thereof."

It is argued on behalf of the defendant that the information in this case fails to set forth any charge of which a criminal court has jurisdiction, and that the prosecution of the defendant is an attempt to make a criminal offense out of an ordinary business transaction between a broker and his customer, and is an effort on the part of the district attorney to use the criminal courts as a means of enforcing a civil obligation.

3. We concede that the statute necessarily requires a careful discrimination in its application. It is limited to cases in which there is a relation of trust or confidence. State v. Trolson, 21 Nev. 419, 32 P. 930. But it is not every breach of trust or confidence that is brought within the terms of the statute. Consequently it is argued in this case that, in so far as the case made by the state is cognizable by law, it must be treated rather as a gross default in a civil obligation than the commission of an act of embezzlement; that there is no proof that defendant had fraudulently misappropriated the money in question; that no demand had been made upon the defendant for the money, and nothing but the delivery of the stock would have satisfied the complainant; that the relationship of the parties was that of debtor and creditor.

Our first inquiry will be to ascertain the true relation between the parties to determine whether the defendant under the admitted facts is within the statute.

4. Brokers are but agents for those who employ their services, and the terms of the agency define and govern the nature and scope of the agent's powers. People v. Meadows, 199 N. Y. 1, 92 NE. 128, affirming 136 App. Div. 226, 121 N. Y. S. 17; 19 Cyc. 190. Brokers are not named in our statute, but the term "agent" is employed,

and, as used in the statute, is comprehensive enough to include brokers. State v. Trolson, supra.

In People v. Karste, 132 Mich. 455, 93 NW. 1081, it is said:

"This is not a statute to punish embezzlement, but to protect persons who place in charge of another funds for control or investment, accompanied by specific instructions, and, we think, is broad enough to cover the relation of principal and broker, unless there should be something in the relations of the parties or in their dealings which indicate a purpose to create the relation of debtor and creditor."

5. The learned counsel for the defendant insist that by reason of the order to buy 5,000 shares of White Caps at 12 cents, buyer 60, accompanied by a payment of $300 as margin, the inference must be drawn that it was the purpose of the parties to create the relation of debtor and creditor, and, therefore, there could be no embezzlement of the money. We do not so construe the transaction. The complainant gave the defendant, his broker, an order to purchase 5,000 shares of White Caps at 12 cents, buyer 60, and gave him $300 to use on the purchase. The defendant received the money for that specific purpose. He afterwards represented that he had purchased the stock in San Francisco. Subsequently the complainant became desirous of closing the buyer contract by purchasing the stock outright. He visited the office of the defendant, and inquired if immediate delivery of the stock would be made if the balance of $300 were paid. The defendant replied, "Absolutely," just as quickly as it could be shipped from San Francisco. Thereupon the complainant gave the defendant $300 to purchase the stock outright without delay. The defendant never delivered the stock, but gave various and conflicting excuses for his failure to do so. The complainant parted with his money on the faith of the defendant's misstatements and representations, altered his position in consequence, and was deceived to his pecuniary injury. The money paid the defendant was

to pay for the 5,000 shares of White Caps stock. The defendant acted as the complainant's agent, and it was his duty to use the money intrusted to him according to his principal's directions.

6, 7. In People v. Meadows, supra, it was held that, where the defendant's firm of brokers had no general account with the principal who transmitted money in payment of stock, the relation of debtor and creditor did not exist between defendant and the principal as affecting the defendant's liability for embezzlement. We think People v. Meadows effectually disposes of the debtor and creditor argument advanced by counsel for the defendant. The case is also authority for the proposition that, where a deliberate diversion by a broker of money transmitted to him by his principal is shown, it requires but slight evidence in facts and circumstances to satisfy the jurors as to the existence of felonious or criminal intent. Where the prosecution makes such a plain prima facie case as this, it becomes incumbent upon the defendant to adduce evidence in denial or explanation of the incriminating circumstances. The act of the defendant is one denounced by the statute, and it was knowingly and voluntarily committed.

The decision in People v. Meadows, supra, is not in conflict with that in People v. Thomas, 83 App. Div. 226, 82 N. Y. S. 215, nor with those in other New York cases relied upon by counsel for the defendant in support of their argument that, where money is deposited with a broker as margin, the relation of debtor and creditor exists. If it were a marginal transaction in its inception, the complainant within a few days after giving the order paid the money in full, with directions to purchase the stock in question outright without delay. Demand and refusal to deliver the stock are admitted. The defendant refrained, as he had a right to, from going upon the stand and explaining to the jury his remarkable and unusual manner of dealing with a customer who reposed confidence in his honesty as a man, and who had unquestioning faith in his financial standing.

Probably it was because it was inexplainable upon any theory of honesty and rectitude of purpose. The complainant's direction to purchase and deliver the stock was thwarted by the actual diversion of the money by the defendant, his agent. The defendant knew the exact situation in regard to the stock. The complainant did not. Instead of executing the commission of his principal the defendant diverted the money paid him for the specific purpose to his own use. Consequently the debtor and creditor argument falls.

It is argued on behalf of the defendant that the evidence is conclusive that, if there was any appropriation or conversion, it was of stock, and not of money. The fallacy of counsels' position is that they assume that defendant was not the agent of the complainant. The defendant represented that he had purchased the stock in San Francisco; but under the buyer contract it was not deliverable until the defendant had received payment in full. The money was intrusted to the defendant for the specific purpose of fulfilling the transaction. Instead of complying with his customer's directions, the defendant commingled the money with his own individual funds, and never delivered the stock. The elements of the offense as defined by the statute were established.

8. It is insisted that the court admitted incompetent and irrelevant evidence which prejudiced the rights of the defendant with the jury. The evidence complained of was the testimony of other customers of the defendant who had been dealt with in the same manner as the complainant, and also the testimony of witnesses tending to show that the defendant, at or immediately preceding the commission of the alleged offense, had borrowed certain shares of stock from the witnesses, and given them his check as security for the loan, and that afterwards the checks were not paid. The testimony of other witnesses tended to show that the defendant was involved, and the pressure of debt was very heavy upon him; that his bank account at the time of the delivery of the money to him for the purchase of

the stock was several thousand dollars overdrawn; and that at about the time of the commission of the offense he actually mortgaged his home for a loan of $250. The argument of the defendant is that the effect of all this line of testimony was to show that the defendant was guilty of other crimes and of swindling other customers and to prejudice the minds of the jurors against him. If it be conceded that the effect of this testimony was to show that the defendant had committed other crimes of a like character, it does not necessarily follow from such fact that the evidence was not admissible against him. 16 Corpus Juris, sec. 1159, p. 596.

In State v. McFarlin, 41 Nev. 486, 172 P. 371, the court said:

"It is the general rule that evidence of the perpetration of distinct crimes from those for which a defendant is being tried will not be considered. There are, however, exceptions to this general rule. In the well-known case of People v. Molineux, 168 N. Y. 264, 61 NE. 286, 62 L. R. A. 193, this question was considered at length, and it was held that, generally speaking, evidence of other crimes might be considered only when it tends to establish either (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime for which the defendant is being tried. Such is, we think, the correct rule."

In the present case the jury were fully instructed as to the purpose for which the evidence complained of could be considered, and we find no error in its admission.

Finding no reversible error in the record, the judgment of conviction is sustained, and the order overruling the defendant's motion for a new trial is affirmed.