[No. 1117.]

## THE STATE OF NEVADA, RESPONDENT, v. DAN McMAHON, APPELLANT.

ARSON—INDICTMENT—DEMURRER.—The indictment charged that on a certain day, in Verdi, Washoe county, Nevada, the defendant feloniously, wilfully and maliciously did burn and consume a certain lot of cordwood of the property of F. Katz and P. Henry, then and there being of the value of four hundred dollars: *Held*, that the demurrer to the indictment was properly overruled.

SEPARATION OF JURY BY CONSENT—STATUTE—WAIVER.—The statute of this state provides that the jury sworn to try an indictment for felony "shall be kept together until they are finally discharged by the court." At the different adjournments during the trial the counsel for the defendant and the state, in open court, consented that the jury might separate, and the defendant waived all objection to such separation: *Held*, that the statute (1 Comp. L. 2004) prescribes the mode of procedure, without reference to consent or waiver; that it does not prevent a waiver of its privileges, and that the separation of the jurors under the facts of this case did not invalidate the verdict.

AFFIDAVITS MUST BE EMBODIED IN BILL OF EXCEPTIONS OR STATEMENT.—Affidavits, as to misconduct of jurors, not embodied in bill of exceptions, or in any properly certified statement, cannot be considered.

ARSON—TESTIMONY OF OTHER FIRES.—P. Henry, one of the owners of the wood, was allowed to testify that he took extraordinary precaution against fire, "because of other fires," and gave the dates of ten other fires within two months: *Held*, that this testimony was admissible because it tended to show that the fire charged in the indictment was not accidental, but of wilful origin.

IDEM—CONVERSATIONS WITH DEFENDANT.—A witness was allowed to testify to a conversation with defendant relative to previous fires, which occurred about one month previous to the fire charged in the indictment, and that defendant then said "he did not pity Katz and Henry a bit, that they were going to build him a cabin and they ought to have a watchman:" *Held*, that this testimony was admissible because it tended to show a motive on the part of the defendant.

STATEMENTS NOT JUSTIFIED BY THE EVIDENCE—MUST BE OBJECTED TO.—*Held*, that the question whether counsel for the prosecution made statements not justified by the evidence, would not be considered, because it does not appear that any objection was made in the court below.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The demurrer was interposed to the indictment upon the following grounds:

1. The statute under which the indictment is drawn does not conform to section 17, art. IV. of the constitution of the state of Nevada.

2. The offense charged is not a felony, and is not made so by the statute under which the indictment is drawn.

3. It does not conform to the requirements of sections 234 and 235 of act concerning indictments. The acts constituting the offense are not stated. It does not appear therefrom that defendant set fire to the cordwood, or caused it to be done. It does not appear that Katz and Henry were in possession of the wood, and for aught that appears, defendant may have removed the wood to his own cabin and used the same for fuel and cooking purposes. It does not appear how much wood was consumed—*i. e.*, the number of cords are not given or the value, so that any computation can be made to ascertain whether fifty dollars or over was consumed under the statute.

4. There is no offense charged with sufficient certainty. The offense, if any, is, under the statute, arson in the second degree. Yet the indictment charges arson, a charge unsupported by the allegations in the complaint.

5. The whole is uncertain and indefinite, and not stated in such a manner as to enable a person of common understanding to know what is meant.

*D. Allen*, for Appellant:

I. The court erred in overruling the demurrer to the indictment.

II. The court erred in permitting the jury to separate during the trial of appellant. The statute, section 2004, provides how juries in criminal cases shall be kept. Criminal law must be construed strictly. Warp the language of section 2004 as one may, the only construction it will bear is that it is mandatory, and means just what the language imports. This is evident from the discretionary power given in cases of misdemeanors, and taken away in cases of felonies. The same question, on a statute less strong, was involved, discussed and decided in the case of *Cantwell* v. *The State*, 18 Oh. S. 477.

III. But we are met by the record that the defendant consented to the separation of the jury. The circumstances under which he gave his consent is no part of the record. The record fails to show who made the proposition to the court to permit the separation. The defendant would not

have voluntarily waived such an important safeguard as the statute gave him.   In this case not only the presumption, but the fact is that the proposition came from the state in open court.   The consent of the defendant in such cases ought not to be asked.   The right given by the statute cannot be waived. (*King* v. *Wolff*, 1 Chitty, 401; *Cantwell* v. *State*, 18 Oh. St. 477; *Goodwin* v. *State*, 16 Oh. St. 345; *Cancemi* v. *People*, 18 N. Y. 128; *People* v. *Backus*, 5 Cal. 275; *State* v. *Green*, 66 Mo. 634.)   The defendant could not be tried other than by a jury of twelve.   (*Ballard* v. *State*, 38 Tex. 504; *Allen* v. *The State*, 54 Ind. 461; *Bell* v. *The State*, 44 Ala. 393; *State* v. *Mansfield*, 41 Mo. 470; *Williams & Haines* v. *The State*, 12 Oh. St. 622.)   The defendant cannot waive his right to be present at the trial.   (*Prine* v. *Commonwealth*, 18 Pa. 103.)

IV.  The doctrine of waiver has nothing to do with criminal proceedings.   No person can be put upon his defense on the charge of crime, or convicted of crime, except in the exact mode prescribed by law.   And whenever it is made manifest in the progress of criminal prosecution that the legal rights of the person charged have been violated, the court will permit the accused to have the benefit of the error.   (*Doyle* v. *The State*, 17 Ohio 225.)   Where there has been a separation unauthorized by law, the verdict should be held void, and should be set aside and a new trial granted.   (*Rowan* v. *The State*, 30 Wis. 129; *Keenan* v. *The State*, 8 Wis. 132; *People* v. *Brannigan*, 21 Cal. 338; *People* v. *Symonds*, 22 Cal. 352; *People* v. *Turner*, 39 Cal. 375; *Eastwood* v. *People*, 3 Park. C. R. 25.)

V.  The court erred in permitting the evidence as to previous fires.   All the evidence as to the other fires, than the one charged in the indictment, was incompetent and irrelevant, and in no view could it have even a tendency to connect the defendant with the fire charged.   For the purposes of the issue it was immaterial whether the other fires were accidental or the work of a fire fiend.   There can be no claim from the evidence that the defendant was connected with the "other fires," and it was both assumption and presumption on the part of the state to claim, without connecting the defendant with the "other fires," that those fires could or would show a

motive assumed or otherwise for the one charged in the indictment; and it was clearly error on the part of the court to permit such evidence to go to the jury, upon such false assumption, which could only wrongfully poison and prejudice the minds of jurors. Had the defendant set all the " other fires " it would not be admissible to prove the facts to show a real motive, much less an assumed motive for burning the wood, and still less that the defendant was guilty as charged. Each individual offense must be tried on its own merits. It is never admissible to prove that a person has previously committed a crime of a similar character to show that he committed the criminal act for which he is on trial. (Bish. Crim. Pro., 2 Ed. 1064; *Barton* v. *The State*, 18 Ohio 221; *Farrer* v. *The State*, 2 Ohio St. 54; *Commonwealth* v. *Campbell*, 7 Allen 541; *State* v. *Renton*, 15 N. H. 169; *Gordon* v. *The State*, 3 Iowa 410.)

*M. A. Murphy*, Attorney-General, for Respondent:

I. The demurrer was properly overruled. (*People* v. *Myers*, 20 Cal. 77.)

II. It was not error to permit the jury to separate. It was by consent of the defendant and his counsel. He cannot now be heard to say that the court erred in complying with his request. (3 Whar. Cr. Law, sec. 3175; 5 Col. Cr. Law Cases, 501; *Quinn* v. *State*, 14 Ind. 589; Id. 39; *Friar* v. *State*, 3 How., Miss. 424; *State* v. *Mix*, 15 Mo. 112; *Stephens* v. *People*, 19 N. Y. 553.) The defendant in a criminal case can waive any of his rights except in a prosecution for murder. (*State* v. *Tuller*, 34 Conn. 294.) A party may waive a right created by statute for his benefit. (*People* v. *Robinson*, 46 Cal. 95.)

III. It was not error to receive evidence of other fires having been started in the immediate neighborhood for the purpose of destroying cordwood. As a general rule, no evidence can be given, upon criminal trial, of other crimes than that charged in the indictment. To this rule there are some exceptions, one of which is, when it becomes material to show the intent with which the act charged was done, evidence may then be given of distinct offenses not charged in the indict-

ment. (*Reg* v. *Taylor*, Cr. Cases, L. 194; 1 Whar. on Cr. Law, sec. 649, 649 a and 649 b.)

By the Court, LEONARD, J.:

Appellant was indicted for the crime of arson. The accusation was that on a certain day, at Verdi, in Washoe county, Nevada, he feloniously, willfully and maliciously did burn and consume a certain lot of cordwood, of the property of F. Katz and P. Henry, then and there being of the value of four hundred dollars. Defendant was convicted of arson in the second degree, and he appeals from the judgment and all orders made in the case, including that overruling his motion for a new trial.

1. Many objections are made to the indictment, but after careful examination we are satisfied that all are without merit, and that the demurrer thereto was properly overruled.

2. The bill of exceptions shows that, during the trial of the cause, at the different adjournments, but before final submission of the case to the jury, the district attorney and appellant and his counsel consented in open court that the jury might separate, and the defendant waived all objections to such separation; whereupon, by order of the court, the jury were permitted to separate, after being duly charged by the court as required by law.

It is claimed that the court erred in allowing a separation under the circumstances stated.

The statute (C. L. 2004) provides that "the jury sworn to try an indictment for a misdemeanor may, at any time during the trial, in the discretion of the court, be allowed to separate. In all cases, on the trial of an indictment for felony, the jurors sworn shall be kept together until they are finally discharged by the court from further consideration of the case."

It is urged by appellant that, under the statute, the court had not power to allow the separation complained of, with or without consent, and that the effect thereof is to render the verdict void; and, second, that the jury while separated were tampered with to his prejudice.

It becomes necessary, then, to inquire whether appellant

had power to consent as he did, and whether he is bound thereby.

That without consent it would be grossly irregular to permit the jury to separate in a trial for felony, there can be no doubt; and that the court, in its discretion, may refuse to act on the consent, is equally clear. (*State* v. *Mix*, 15 Mo. 112.)

Jurisdiction cannot be given by consent, and under the constitutions of different states it has been decided, oftentimes, that in trials for felony, and especially in capital cases, the right of trial by jury, as it existed at the time of the adoption of the common law, cannot be waived. And yet the same courts have held that, in many other respects, constitutional as well as statutory rights may be waived.

Our constitution provides that "the right of trial by jury *shall be secured* to all, and remain inviolate forever." In *State* v. *McClear*, 11 Nev. 39, this court held that the words "trial" and "trial by jury" mean twelve competent men, disinterested and impartial, not of kin, nor personal dependents of either of the parties, having their homes within the jurisdictional limits of the court, drawn and selected by officers free from all bias in favor of or against either party, duly impaneled and sworn to render a true verdict according to the law and the evidence. But it was held in *State* v. *Anderson*, 4 Nev. 266, a murder case, that if a prisoner accepts a juror without objection, whom he knows to have formed and expressed an unqualified opinion, he cannot, after verdict, raise the objection. (And see *State* v. *Pritchard*, 15 Nev. 75; *Croy* v. *State*, 32 Ind. 384; *Kingen* v. *State*, 46 Ind. 133; *Gillooley* v. *State*, 58 Ind. 182; *State* v. *Tuller*, 34 Conn. 294.)

The constitution of Iowa provides that "the right of trial by jury shall remain inviolate, * * * but no person shall be deprived of life, liberty or property without due process of law."

In *State* v. *Kaufman*, 51 Iowa 578, it appears that on the trial one of the jurors became ill, and, with the consent of defendant, said juror was discharged, and the trial resumed before eleven jurors. There was a verdict of guilty. A motion was filed in arrest of judgment and for a new trial, on

the ground that no legal judgment could be rendered on such a verdict.

The supreme court held that the defendant, with the consent of the state and of the court, could waive a statute enacted for his benefit; that he could consent to go to trial with but eleven jurors, and that a trial in that manner, with such consent was not prohibited by the constitution.

The decision may be read with interest and profit, even by those of different opinion. We pass no opinion upon the correctness of this decision.

The Iowa constitution also provides that, "In all criminal prosecutions * * * the accused shall have the right * * * to be confronted with witnesses against him."

In *State* v. *Polson*, 29 Iowa, 133, "It was agreed in open court between the district attorney and counsel of defendant, in the presence of the defendant and of the jury, that in order to save time and facilitate the trial of the cause, the testimony taken upon a former trial should be read to the jury as a substitute for the oral testimony of the witnesses in court." A conviction followed, which was held to be right, and that the constitutional provision was a personal right, and in no manner affected the jurisdiction of the court, and that it might be waived.

In *People* v. *Lightner*, 49 Cal. 228, under a statute like ours, providing that in a criminal case, "The arraignment must be made by the court, or by the clerk or district attorney, under his direction, and consists in reading the indictment to the defendant, and delivering a copy thereof, and of the indorsements thereon, including the list of witnesses indorsed on it, and in asking him whether he pleads guilty or not guilty to the indictment," the defendant, indicted for murder, being in court with his counsel, was called for arraignment. He was asked by the court if he was ready to plead, and answered that he was not. He requested two days for that purpose, which time was granted. The clerk did not give him a copy of the indictment, but stated to the court that he had a copy in his office, to which he had not attached the seal of the court. The defendant made no objection, and after the adjournment the clerk, in his office, handed the defendant's attorney a copy of the indictment.

Subsequently he refused to plead, and the court directed a plea of "not guilty" to be entered for him. Upon these facts the supreme court said:

"As a general rule a defendant may waive any statutory right or proceeding. * * * We entertain no doubt that a prisoner may expressly waive any formal steps and plead, when called up for arraignment, and there can be no good reason why a defendant (present personally and by counsel) should not be held to have waived any details of the proceedings which constitute the arraignment when, as in this case, he asks for time to plead, which of itself admits the existence of the indictment and knowledge, or opportunities for acquiring knowledge, of its contents."

The constitutions of most, if not all of the states, provide that "no person shall be subject to be twice put in jeopardy for the same offense." Still it is settled law that a prisoner's consent to the discharge of a previous jury is an answer to a plea of former acquittal, although such plea would have been good and a bar to further prosecution without such consent. (*Peiffer* v. *Commonwealth*, 15 Pa. St. 470; Bish. Crim. Prac. vol. 1, sec. 112.)

Although the law requires challenges for actual bias to be tried by triers appointed by the court, it is held in *People* v. *Rathbun*, 21 Wend. 541, and *Cancemi* v. *People*, 18 N. Y. 137, that the right may be waived by either the state or defendant, and the court, by consent, may be substituted in their place. Secondary, instead of primary, evidence may be received by consent. (*Bebee* v. *The People*, 5 Hill. 33.)

A plea of guilty to an indictment, whatever may be the grade of the crime, will be received and acted upon if it is made clearly to appear that the nature and effect of it are understood by the accused. (*Cancemi* v. *People*, *supra*.)

In Wisconsin the statute provided that no person should be tried for a felony without being present at the trial. In *Hill* v. *The State*, 17 Wis. 675, the court recognized the prisoner's right to be present during the entire trial, and said it would be erroneous to deprive him of such right without his consent. But it was held that the prisoner, having the privilege of being present at the trial, and being in condition to exercise

it, might voluntarily waive the right, so far at least as to be temporarily absent from the room during some portion of the progress of the trial.    Accordingly, the fact that he voluntarily absented himself from the court-room while the jury retired to reduce their verdict to writing, and did not return until the verdict had been received and the jury discharged, his counsel being present and polling the jury, it was held did not entitle him to a new trial.

It was held otherwise in *Prine* v. *Commonwealth*, 18 Pa. St. 104.

It should be remarked that generally where it has been held that a separation of the jury, before final submission, is fatal, even though there is consent of both parties and the court, the trials were for capital offenses, and as is said in *Cannon* v. *The State*, 3 Tex. 34, " the principle is familiar that in cases affecting life, far greater strictness is required than in trials of an inferior degree."

The statute in relation to the separation of juries above quoted, prescribes the method of procedure, without reference to consent or waiver, just as it does in relation to arraignment, challenges to grand and trial jurors, and many other things that need not be mentioned.    But it does not prevent a waiver of its privileges.

If the jury had separated without the defendant's consent, either with or without the order of the court, the burden of proof would have been upon the state to show that the separation did not prejudice his case, but with the consent and order the burden of showing abuse remains upon the defendant.

He did not, however, consent to more than separation, and if there is legal proof that any of the jurors were tampered with or misbehaved themselves, or that anything else occurred which is ground for new trial, such facts must be held to have their full weight and influence.    (*Bebee* v. *The People*, 5 Hill 34.)

We think the irregularity complained of, if such it may be called, was cured by defendant's consent and waiver, and that the separation does not, *per se*, invalidate the verdict.   (Vol. 3, Wharton on Crim. Law, sec. 3,175; *Cannon* v. *State*, *supra*; *State* v. *Jones*, 7 Nev. 413; *State* v. *Mix*, 15 Mo. 112; *Stephens* v. *People*, 19 N. Y. 553.)

The only evidence of abuse and misconduct that is relied on by defendant is in the form of affidavits made by two jurors and one of his attorneys. It is claimed that they were used in the court below, on motion for new trial and in arrest of judgment. But they are not embodied in the bill of exceptions or in any properly certified statement, and we cannot consider them. (*State* v. *Baker*, 8 Nev. 146.) At the end of the transcript the clerk certifies that "the foregoing is a full, true and correct copy of the original papers constituting the record of the action in said court, entitled *The State of Nevada*, plaintiff, v. *Dan McMahon*, defendant, and of the notice of appeal therein." But the affidavits in question form no part of the "record of the action." (Comp. L. 2075.) There is also in the transcript, following the bill of exceptions, what purports to be a copy of the court's decision denying the motions for a new trial and arrest of judgment, wherein it appears that the court found that "the affidavits of the jurors upon the trial were not entitled to be used upon said motions; that neither of said affidavits nor the other affidavits presented and read, presented any ground in support of the motions."

So, should we consider the clerk's certificate as proof that these affidavits were filed before the motion for a new trial was heard, as they purport to have been, still he does not certify that the transcript contains copies of all the affidavits and papers in the case; and if we can consider these findings of the court, as they are presented, we are unable to say that the affidavits are the ones referred to by the court as having been presented and read. There may have been other affidavits on file in the case which were used in support of the motions, instead of those embodied in the transcript.

3. The bill of exceptions shows that the district attorney, in opening the case, stated to the jury that he expected to prove that there were ten or eleven fires in the town of Verdi, and that such proof would be offered and made for the purpose of showing the fire charged in the indictment was not accidental, but of willful origin. It also shows that at the trial, P. Henry, one of the owners of the wood described in the indictment, who had already testified without objection, that he

took extraordinary precaution against fire in regard to said wood, was asked, "Why he took. extraordinary precaution against fire?" The question was objected to; the objection was overruled and an exception taken. The witness answered that "it was because of other fires." He also gave the dates of ten fires within about two months, and stated that they all occurred between six and seven o'clock in the evening. Defendant moved the court to strike out all testimony in relation to other fires, on the ground that it was evidence of other and distinct felonies occurring at long intervals of time, and tending to prejudice the minds of the jurors. The motion was overruled and an exception taken. The state was also permitted to prove, against defendant's objection, by another witness, one Hodgins, a conversation between the witness and defendant, that occurred about a month previous to the fire charged in the indictment, to the effect that defendant said "he did not pity Katz and Henry a bit; that they were going to build him a cabin, and they ought to have a watchman."

The district attorney stated to the court that he desired to introduce this testimony to show that one motive of the defendant in setting the fire charged was to alarm Katz and Henry, touching the safety of their property exposed to fire, and thereby secure employment from them as a watchman; and that the purpose of this testimony was to reflect upon this motive. The court admitted the testimony offered for the purposes mentioned and no other.

Other testimony of statements made by defendant at previous fires was admitted for the same purpose.

The bill of exceptions does not contain all of the evidence, but it is shown that the evidence relied on by the state to sustain a conviction was greatly, if not entirely, circumstantial.

We think Henry's testimony tended to show the fire charged in the indictment was not accidental, and that the testimony of the other witnesses was admissible as tending to show motive.

Under the court's instructions, the jury must have found that the defendant set the fire charged, and in connection with the proof of that fact, the testimony in question tended to show that he did it "wilfully and maliciously." (Wharton on Crim. Law, sec. 635 a, *et seq.* and 649.)

The object of Henry's testimony was not to prove the other fires were not accidental, or that defendant set them, but to show that the one charged in the indictment was not accidental, but was of willful origin.

4. Complaint is made that counsel for the state, in opening the case to the jury, and in their final argument, made statements not justified by the evidence, and constantly aimed to prejudice the minds of the jury against the defendant.

There is nothing before us, of which we can take notice, to sustain this claim; but should we consider the affidavit made to sustain it, it would not help defendant, because it nowhere appears that he objected to the conduct complained of. (*Ames and Payne* v. *Potter*, 7 R. I. 269.)

Other grounds for a new trial were stated in the motion, but being abandoned here, they will not be noticed.

The judgment and orders appealed from are affirmed.