# HORACE GOUCHER TUCKER, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 4893

April 11, 1966                    412 P.2d 970

*Harry E. Claiborne*, of Las Vegas, for Appellant.

*Harvey Dickerson*, Attorney General, of Carson City, and *Edward G. Marshall*, District Attorney of Clark County, and *Earl Gripentrog*, Deputy District Attorney, both of Las Vegas, for Respondent.

**OPINION**

By the Court, THOMPSON, J.:

On May 7, 1957, Horace Tucker telephoned the police station and asked a detective to come to the Tucker home in North Las Vegas. Upon arrival the detective observed that Tucker had been drinking, was unshaven, and looked tired. Tucker led the detective to the dining room where one, Earl Kaylor, was dead on the floor. Kaylor had been shot several times. When asked what had happened, Tucker said that he (Tucker) had been sleeping in the bedroom, awakened, and walked to the dining room where he noticed Kaylor lying on the floor. Upon ascertaining that Kaylor was dead, Tucker telephoned the police station. He denied having killed Kaylor. A grand jury conducted an extensive investigation. Fifty-three witnesses were examined. However, an indictment was not returned as the grand jury deemed the evidence inconclusive. No one, including Tucker, has ever been charged with that killing.

On October 8, 1963, Horace Tucker telephoned the police and asked a sergeant to come to the Tucker home in North Las Vegas; that there was an old man dead there. Upon arrival the sergeant noticed that Tucker had been drinking. The body of Omar Evans was dead on the couch in the living room. Evans had been shot. Tucker stated that he (Tucker) had been asleep, awakened, and found Evans dead on the couch. Subsequently Tucker was charged with the murder of Evans. A jury convicted him of second degree murder and the court pronounced judgment and the statutory sentence of

imprisonment for a term of "not less than 10 years, which term may be extended to life."

At trial, over vehement objection, the court allowed the state to introduce evidence of the Kaylor homicide. The court reasoned that the circumstances of the deaths of Kaylor and Evans were sufficiently parallel to render admissible evidence of the Kaylor homicide to prove that Tucker intended to kill Evans, that the killing of Evans was part of a common scheme or plan in Tucker's mind, and also to negate any defense of accidental death. These limited purposes, for which the evidence was received and could be considered by the jury, were specified by court instruction as required by case law. See Brown v. State, 81 Nev. 397, 404 P.2d 428 (1965) ; State v. Monahan, 50 Nev. 27, 249 P. 566 (1926) ; State v. McFarlin, 41 Nev. 486, 172 P. 371 (1918). We rule that evidence of the Kaylor homicide was not admissible for any purpose and that prejudicial error occurred when the court permitted the jury to hear and consider it.

Nevada follows the rule of exclusion concerning evidence of other offenses. We exclude any evidence which shows that the defendant committed other offenses (Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962)), unless relevant to prove the commission of the crime charged. The "unless" portion of the rule is stated in the form of exceptions. Thus we have held that evidence of an offense, other than that for which the accused is on trial, may be allowed as an exception if relevant to prove: motive (State v. Cerfoglio, 46 Nev. 332, 213 P. 102 (1923)) ; intent (State v. Vertrees, 33 Nev. 509, 112 P. 42 (1910) ; State v. McMahon, 17 Nev. 365, 30 P. 1000 (1883) ; State v. Elges, 69 Nev. 330, 251 P.2d 590 (1952) ; Wallace v. State, 77 Nev. 123, 359 P.2d 749 (1961) ; Wyatt v. State, 77 Nev. 490, 367 P.2d 104 (1961) ; Fernandez v. State, 81 Nev. 276, 402 P.2d 38 (1965)) ; identity (State v. Roberts, 28 Nev. 350, 82 P. 100 (1905) ; Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959)) ; the absence of mistake or accident (State v.

McMahon, supra; Brown v. State, 81 Nev. 397, 404 P.2d 428 (1965)) ; or a common scheme or plan.

Whenever the problem of evidence of other offenses confronts a trial court, grave considerations attend. The danger of prejudice to the defendant is ever present, for the jury may convict now because he has escaped punishment in the past. Nor has the defendant been advised that he must be prepared to meet extraneous charges. Indeed, as our system of justice is accusatorial rather than inquisitorial, there is much to be said for the notion that the prosecution must prove the defendant guilty of the specific crime charged without resort to past conduct. Thus when the other offense sought to be introduced falls within an exception to the rule of exclusion, the trial court should be convinced that the probative value of such evidence outweighs its prejudicial effect. Brown v. State, supra; Nester v. State, supra; State v. Nystedt, 79 Nev. 24, 377 P.2d 929 (1963). The reception of such evidence is justified by necessity and, if other evidence has substantially established the element of the crime involved (motive, intent, identity, absence of mistake, etc.), the probative value of showing another offense is diminished, and the trial court should rule it inadmissible even though relevant and within an exception to the rule of exclusion.

In the case at hand we need not consider whether evidence of the Kaylor homicide comes within one of the exceptions to the rule of exclusion, because the first requisite for admissibility is wholly absent—namely, that the defendant on trial committed the independent offense sought to be introduced. There is nothing in this record to establish that Tucker killed Kaylor. Anonymous crimes can have no relevance in deciding whether the defendant committed the crime with which he is charged. Kaylor's assailant remains unknown. A fortiori, evidence of that crime cannot be received in the trial for the murder of Evans.

We have not before had occasion to discuss the quantum of proof needed to establish that the defendant

on trial committed the separate offense sought to be introduced. Here there was only conjecture and suspicion, aroused by the fact that Kaylor was found dead in Tucker's home. We now adopt the rule that, before evidence of a collateral offense is admissible for any purpose, the prosecution must first establish by plain, clear and convincing evidence, that the defendant committed that offense. Labiosa v. Gov't of the Canal Zone, 198 F.2d 282 (Cir. 5, 1952) ; Gart v. United States, 294 F. 66 (Cir. 8, 1923) ; Paris v. United States, 260 F. 529 (Cir. 8, 1919) ; cases collected annot., 3 A.L.R. 784. Fundamental fairness demands this standard in order to preclude verdicts which might otherwise rest on false assumptions.

There is one other ground of error which we should consider. A police officer was allowed to testify to a statement made to him by Tucker shortly after the police arrived and found Evans' body. The statement is, "You_____find_____gun this time." Appellant cites Buster v. State, 23 Nev. 346, 47 P. 194 (1896), and contends the statement was unintelligible and thus inadmissible as a matter of law. We think that the statement is understandable and therefore admissible.

Reversed and remanded for new trial.

COLLINS, D. J. and WINES, D. J., concur.