GEORGE R. KELLY, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 21726

August 5, 1992          837 P.2d 416

[Rehearing denied November 3, 1992]

*Paul A. Sherman,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, *Kevin G. Higgins,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

The appellant, George Kelly ("Kelly"), was serving a fifteen-year sentence for attempted sexual assault when he filed a habeas corpus petition in federal court. In his habeas petition, Kelly included a letter, purportedly written by his trial counsel, guaranteeing him a maximum five-year sentence in exchange for pleading guilty to attempted sexual assault. Based upon this letter, Kelly was subsequently charged in state court with forgery and offering false evidence.

At trial, the State introduced evidence of Kelly's prior conviction of attempted sexual assault and the circumstances surrounding this conviction, including evidence of the specific four charges brought against Kelly, the maximum sentences they carried, Kelly's guilty plea (to attempted sexual assault), and the three charges subsequently dismissed. Kelly now contends that the district court committed prejudicial error in admitting evidence of his prior conviction and the dismissed charges. We disagree and affirm the judgment of conviction.

### The Facts

Kelly was previously charged with four crimes: attempted sexual assault, sexual assault, attempted statutory sexual assault, and statutory sexual assault. All of these charges involved Kelly's alleged molestation of his child. Because Kelly had confessed to the molestation and because the felonies of sexual assault and statutory sexual assault each carry a possible life sentence, Kelly's trial counsel recommended a plea bargain. Thereafter,

Kelly agreed to plead guilty to attempted sexual assault, which carries a maximum twenty-year sentence; in return, the State agreed to drop the remaining charges and to recommend a five-year sentence to the court. At no time, however, was Kelly told that he would receive a five-year sentence. In fact, Kelly was informed that although the court might adopt the State's sentencing recommendation, the judge could sentence him to a maximum of twenty years in prison. The plea agreement that Kelly signed also states that the judge has discretion to determine Kelly's sentence.

During the sentencing hearing, the State recommended a five-year sentence.[1] The judge asked Kelly if he understood that the maximum sentence for the crime of sexual assault is twenty years, and Kelly answered, "Yes." The judge also asked if any promises other than those contained in the plea agreement had been made; Kelly answered, "No." The judge then asked if other negotiations had occurred, and Kelly responded, "No." When the judge asked Kelly what the maximum penalty could be, Kelly answered that the maximum penalty was twenty years and that the terms of sentencing were up to the judge. At no time during this hearing did Kelly state that he had been promised a five-year maximum sentence. At the conclusion of the hearing, the judge sentenced Kelly to fifteen years in prison.

Subsequently, Kelly filed a motion to withdraw his guilty plea; the district court denied this motion, and Kelly filed an appeal. In none of his pleadings did Kelly mention that he had received a five-year maximum sentence guarantee. Furthermore, at no time did Kelly question his trial counsel about breaching the promise of a five-year sentence.

Five years after he was convicted and sentenced, Kelly filed a petition for habeas corpus in the federal district court. In this petition, which Kelly signed under penalty of perjury, Kelly alleged that his guilty plea was involuntary and induced by promises from counsel. He stated that his trial counsel had guaranteed him a five-year sentence; specifically, Kelly stated that "[t]rial counsel absolutely *guaranteed me* that I would not receive more than five (5) years. Counsel coached me to give judge canvassing answers counsel desired given."

Kelly attached to his habeas petition a letter, purportedly written by his trial counsel, which states that she had "made a negotiation with both the Court and the State" and that "[i]n exchange for your guilty plea . . . the other three charges will be

---

[1]The State first recommended "at least" a five-year sentence, then changed its recommendation to a five-year sentence. On Kelly's direct appeal, we determined that the State conformed to its promise under the plea agreement.

dismissed and you will receive a five (5) year sentence." The letter also states the following:

A formal plea memorandum is being drawn by me and although it states in it that the Judge has the discretion to impose any sentence up to the maximum of twenty years—I want to assure you that I have already obtained the agreement of the Judge and the State that you will not be sentenced to more than five (5) years.

Kelly was subsequently charged in state court with forgery and offering false evidence. As mentioned, during the trial, the prosecutor and State's witnesses explained the circumstances of Kelly's prior conviction, including the charges brought against him, the maximum sentences they carried, his guilty plea, and the dropped charges. The court was careful to exclude any evidence that Kelly had molested his own child.

## *Discussion*

Kelly asserts that the district court committed prejudicial error in allowing the State to introduce evidence of his prior conviction and the three dismissed charges.[2] We disagree, however, and conclude that the district court did not err in determining that the evidence was relevant and not more prejudicial than probative. In addition, we conclude that the evidence falls within the scope of NRS 48.045(2).

First, the evidence was relevant. The State could hardly discuss the circumstances of Kelly's plea agreement, which relate directly to Kelly's knowledge of the forged letter and false information on the habeas petition, without bringing in evidence of the dropped charges. Two of the dropped charges carried possible life sentences, and these were the charges that Kelly sought to avoid with his plea agreement. His plea agreement simply would not make sense to a jury if the jury were only informed that he was charged with attempted sexual assault, which carries a maximum sentence of twenty years. In fact, his allegation that he was promised a maximum five-year sentence for his guilty plea might have sounded reasonable if the evidence of other charges had

---

[2]Kelly initially argues that Nevada courts lack subject matter jurisdiction over this matter because his acts constituted offenses only against the federal government. We disagree. Nevada courts have jurisdiction over crimes committed in this state unless the offense is, by law, "cognizable exclusively in the courts of the United States." NRS 171.010. Because forgery is prohibited by Nevada law, a defendant may be tried in Nevada courts for the crime.

been precluded. It is also worth noting that an important piece of evidence in this case, the forged letter attached to Kelly's habeas petition, discusses the "other charges." The fact that the State dropped these "other charges" was ostensibly the most important part of the plea agreement at issue.

In his habeas petition, Kelly included a letter discussing a "secret deal" between his counsel, the prosecutor, and the court. In his petition, and at trial, Kelly asserted that he was promised a maximum five-year sentence, was misled by his trial counsel, and that some sort of misbehavior occurred during the plea negotiations. Thus, to determine whether Kelly's allegations had merit, the circumstances behind the plea agreement and sentencing hearing necessarily had to be explained. As the district court stated, the charges of sexual assault were germane to the plea negotiations—sexual assault is a special type of assault and authorizes a life sentence; it thus warrants a careful approach by counsel. In other words, the serious nature of the charges directly related to whether or not Kelly could have been promised a five-year maximum sentence and whether or not any "secret deal" had been made. The dropped charges also related to the reasonableness of Kelly's plea agreement. The circumstances of the plea negotiations were thus intimately related to the false allegations made by Kelly in his petition for habeas corpus. Therefore, this evidence was relevant in that it shows that there was no "secret deal," that Kelly struck the best deal he could under the circumstances, and that Kelly participated in the forgery and knew that the allegations in his habeas petition were false.

Further, we have recognized that

> While Nevada's Evidence Code prohibits the use of other crimes, wrongs, or acts as evidence of an accused's character in order to prove that he acted in conformity therewith on a particular occasion, such evidence may, however, be admissible for other purposes . . . where its probative value is not substantially outweighed by the danger of unfair prejudice. The decision to admit such evidence rests with the sound discretion of the trial court and will not be disturbed on appeal absent a showing that the ruling was manifestly wrong.

Brackeen v. State, 104 Nev. 547, 552, 763 P.2d 59, 63 (1988) (citations omitted); *accord* Kazalyn v. State, 108 Nev. 67, 825 P.2d 578 (1992). As discussed above, in the present case, the evidence of Kelly's charges and guilty plea is probative of Kelly's knowledge of the actual terms of his plea agreement and whether Kelly *could* reasonably have believed that he was promised a five-

year maximum sentence. Although admitting evidence of prior charges always involves the danger of prejudice, the district court determined that the probative value of this evidence outweighed any potential prejudicial effect.[3] In addition, the court was careful to admonish the prosecutor not to explore the specific facts underlying the charges, and the court refused to admit a portion of the prior proceedings that would have revealed that Kelly had molested his own child. Because the evidence of Kelly's charges was relevant and probative, and because the district court's decision to admit the evidence was not manifest error, the decision should not be disturbed.

Moreover, in *Brackeen,* 104 Nev. at 553, 763 P.2d at 63, this court recognized that "[w]e have adopted the rule that the State is entitled to present a full and accurate account of the circumstances surrounding the commission of a crime, and such evidence is admissible even if it implicates the accused in the commission of other crimes." In the present case, the underlying plea agreement constitutes part of the circumstances surrounding Kelly's charges of forgery and offering false evidence. Thus, the State was entitled to present evidence of the underlying charges and plea agreement to give the jury a "full and accurate" picture of the circumstances involved in Kelly's present charges.

We also conclude that evidence of the dropped charges falls within the ambit of NRS 48.045(2). This statutory provision states that

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, *knowledge,* identity, or absence of mistake or accident.

NRS 48.045(2) (emphasis added). In the present case, evidence

---

[3]We have recognized that

> [t]he use of uncharged bad acts to convict a defendant is heavily disfavored in our system of criminal justice. Such evidence . . . forces the accused to defend himself against vague and unsubstantiated charges. Evidence of uncharged misconduct may unduly influence the jury, and result in a conviction of the accused because the jury believes he is a bad person. The use of specific conduct to show a propensity to commit the crime charged is clearly prohibited by Nevada law.

Berner v. State, 104 Nev. 695, 696-97, 765 P.2d 1144, 1145 (1988) (citations omitted).

In the present case, however, unlike the *Berner* case, evidence of Kelly's charged bad acts was introduced, and evidence of these acts did not force Kelly to defend himself against vague and unsubstantiated charges.

of Kelly's dropped charges (and conviction) was *not* introduced to show his character or that he acted in conformity therewith; instead, it was introduced to explain the circumstances of the plea negotiations, and Kelly's knowledge pursuant to these negotiations. Kelly's knowledge of his possible life sentences, his knowledge that the most serious charges would be dropped if he pled guilty, his knowledge that he faced a maximum twenty-year sentence for the remaining charge, and his knowledge that the court had sentencing discretion is directly relevant to his knowledge that the letter was forged, and that he knew that his statements in the habeas petition were false. Thus, the evidence of Kelly's other charges and his plea negotiations falls squarely within the scope of NRS 48.045(2).[4]

Furthermore, because Kelly testified, evidence of his prior conviction was also admissible for impeachment purposes. NRS 50.095 explains that "[f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime was punishable by death or imprisonment for more than one year." Additionally, the type of felony of which Kelly was convicted was admissible evidence. In Givens v. State, 99 Nev. 50, 54, 657 P.2d 97, 99 (1983), *overruled on other grounds,* Talacon v. State, 102 Nev. 294, 721 P.2d 764 (1986), we held that "[t]he trial court has discretion to admit or exclude the number and names of prior felony convictions." In *Givens,* the defendant had been previously convicted of assault with attempt to commit rape; in his subsequent trial on kidnapping and multiple sexual assault charges, the district court allowed the prosecution to name his prior conviction. We concluded that the court had not abused its discretion. Similarly, in this case, the district court did not abuse its discretion in admitting evidence concerning the type of felony of which Kelly was convicted.

The only possible error in Kelly's trial occurred when the district court admitted evidence of the nature of Kelly's dismissed charges. We conclude, however, that the district court did not err. And, moreover, even if the admission of this evidence constitutes error, we believe that the error was harmless beyond a reasonable doubt. *See* Chapman v. California, 386 U.S. 18 (1967); Rice v.

---

[4]The dissent cites Beck v. State, 105 Nev. 910, 784 P.2d 983 (1989). In *Beck,* we determined that evidence of alleged, uncharged misconduct that occurred sixteen years prior to the current charged crime was not admissible because it was not relevant. Thus, *Beck* is factually distinct from the present case.

State, 108 Nev. 43, 824 P.2d 281 (1992). First, the jury was informed that the other charges had been *dropped* after Kelly pled guilty to attempted sexual assault. In addition, all of Kelly's charges related to sexual assault; because evidence that Kelly had been convicted of attempted sexual assault was clearly admissible and admitted, we conclude that the evidence of dropped charges involving the same conduct was not prejudicial. Further, the jury was not allowed to hear evidence on the facts of the underlying assault charges because the district court concluded that this evidence was too prejudicial. Moreover, Kelly's attorney asked, during his cross-examination of Kelly's former trial counsel, if it would "be fair to state that it's a difficult thing for a man to walk into court and plead guilty to the crime with which Mr. Kelly was charged." Thus, Kelly's own counsel made inferences about the nature of Kelly's prior charges. Finally, Kelly himself admitted that he was charged with four crimes and that the charges involved two life sentences and two twenty-year sentences. Under these circumstances, we conclude that the evidence of the names of the charges did not affect the jury's decision.

Additionally, "[w]here the evidence of guilt is great . . . error [in admitting evidence] will be deemed harmless." McMichael v. State, 98 Nev. 1, 4, 638 P.2d 402, 403 (1982); *see* Robins v. State, 106 Nev. 611, 798 P.2d 558 (1990), *cert. denied,* 111 S.Ct. 1608 (1990). Our review of the record reveals an abundance of evidence supporting the jury's finding of guilt. First, the State introduced the prison recordkeeper, who testified that Kelly had signed the "record review log" after reviewing his legal file.[5] In addition, Kelly stipulated that the signature on his habeas petition, stating that he had been "absolutely guaranteed" a five-year sentence, was his and that he had read the habeas petition before signing it.[6] Further, Kelly's former trial counsel testified that she had not written the letter, and that she had told Kelly that he faced a possible twenty-year sentence for sexual assault. Kelly's former trial counsel also testified that it is not possible for a plea bargain to bind the court to a particular sentence and that she was certain that Kelly decided to forge the letter.

Although Kelly attempted to blame the forgery on a fellow inmate, Randal Wiideman, at trial, an expert documents examiner concluded that the letter was an altered document and that only *part* of the forged letter may have been typed on Wiideman's typewriter. In addition, the State introduced evidence that Kelly had access to typewriters and copying machines. The State also

---

[5]Kelly stipulated that his signature was, in fact, on this document.

[6]Kelly testified that he had read the letter and habeas petition, but that he did not have his glasses.

showed that the written plea agreement did not guarantee Kelly a five-year sentence, that it explained that the judge had sentencing discretion, and that it stated that Kelly's crime carried a maximum twenty-year sentence.

The State also demonstrated that at the sentencing hearing, Kelly was asked if he was involved in any other promises other than those contained in the plea agreement; Kelly answered, "No." Also, at this hearing, Kelly acknowledged that his maximum sentence was twenty years and that the terms of sentencing were up to the judge.

Importantly, although given an opportunity, Kelly never told the sentencing judge about the alleged "secret" plea agreement; nor did Kelly complain about the alleged breach of this agreement for five years, even though he filed numerous pleadings. When asked about the forged letter, Kelly replied that he did not remember receiving the letter, even though it states that it was "hand delivered." Kelly did testify that he was "dumbfounded" when he "learned" of the letter. Most importantly, during cross-examination, Kelly admitted that his trial counsel had *not* promised him a five-year sentence. Kelly was then asked, "So [the letter] isn't true, is it?" Kelly answered, "I guess not."

We conclude that the district court did not err in admitting evidence of Kelly's prior conviction or evidence that Kelly had been charged with other crimes. Because the evidence of Kelly's guilt is overwhelming, the references to the *nature* of the dropped charges, if error at all, were harmless, and Kelly's substantial rights were not affected.[7] *See* Stickney v. State, 93 Nev. 285, 287, 564 P.2d 604, 605 (1977). After reviewing the record, we conclude that Kelly's other contentions are without merit. We therefore affirm the district court's judgment of conviction.

Rose and Steffen, JJ., concur.

Young, J., with whom Mowbray, C. J., joins, dissenting:
Respectfully, I dissent.

---

[7]In Honkanen v. State, 105 Nev. 901, 902-03, 784 P.2d 981, 982 (1989), we explained that to find the admission of evidence of prior *uncharged* acts harmless error, we had to be certain that "the jury did not convict the appellant of the [prior] uncharged . . . incident under the pretext of the [subsequent] charged offense, or use the [prior] incident to conclude appellant 'acted in conformity' with the prior . . . act when he committed the [subsequent] charged act." In the present case, we are certain that the evidence of Kelly's prior *charged* acts did not lead the jury to convict him of these acts, as he had already pled guilty to one of the charges, and his forgery/false evidence charges were not similar to the assault charges. In addition, we believe that the jury did not conclude that Kelly, in forging the letter and offering false evidence, acted in conformity with the dropped assault charges.

## The Material Facts

In January 1984, after a plea of guilty was entered, the district court sentenced Kelly to serve fifteen years in the Nevada State Prison. In November 1984, Kelly moved to withdraw his plea, arguing that his defense counsel had failed to recognize a possible defense and that the State had breached the plea bargain. Specifically, Kelly argued that he had agreed to plead guilty in exchange for the State's recommendation at sentencing that he receive no more than five years. However, at sentencing, the State recommended that Kelly be "sentenced to at least, well, to five years." Thus, reasoned Kelly, the State implicitly recommended more than five years. The district court denied this motion.

In February 1988, Kelly filed a petition for a writ of habeas corpus in the federal district court, arguing that he pled guilty based on unfulfilled promises of counsel. In support, he attached a letter allegedly written by Laura FitzSimmons (FitzSimmons), his former defense counsel. In the letter, FitzSimmons purportedly stated that in exchange for a plea of guilty, the State and the trial judge had agreed that Kelly would receive only a five-year sentence. (Oddly, Kelly did not make this argument when he moved to withdraw his guilty plea.) Based on this letter, Kelly was charged in state court with offering false evidence and forgery.

At trial, FitzSimmons testified that she did not enter into an agreement with the State and the trial judge as to Kelly's maximum sentence. Such an agreement would have been impossible because counsel are not authorized to guarantee a maximum sentence; counsel may merely *recommend* a sentence. The trial judge retains the authority to reject or accept the recommendations from counsel.[1] Moreover, district judges in Nevada are not involved in the plea negotiations.

FitzSimmons also testified that she did not draft, nor did her secretary type, the letter. In fact, the typeface under her signature was larger than the typeface of the body of the letter. Her office, however, used only one style of typeface for letters. She further noted that the letter indicated that it had been hand-delivered to Kelly, which contradicted her policy of never hand-delivering materials to inmates.

The State next called as a witness William Maddox (Maddox), the prosecutor who negotiated the plea bargain with FitzSim-

---

[1] FitzSimmons adamantly pointed out that one of the core principles in plea negotiations is to make sure the defendant realizes that sentencing is up to the judge. In fact, before Kelly pled guilty, the trial judge asked him, "You understand, Mr. Kelly, that the matter of sentencing is strictly up to me and no person right now can predict or forecast what that sentence will be?" Kelly responded, "Yes, sir, I do."

mons. Maddox corroborated FitzSimmons' testimony. He testified that the trial judge was not involved in the negotiations; that in exchange for the guilty plea, Maddox agreed to recommend a five-year sentence (a recommendation which did not bind the trial judge); and that he never guaranteed Kelly that his maximum sentence would be five years.

The State demonstrated that the letter was an altered document. The State's expert, an examiner of the genuineness of documents, identified two different styles of typeface in the letter, indicating that the document was produced by different typing instruments.

Kelly asserted a simple defense: a fellow inmate (Wiideman) who prepared and typed Kelly's federal petition for habeas corpus forged the document. According to Kelly, Wiideman advised him to transfer his records to the prison. When they arrived, Kelly gave the records to Wiideman without reading through them. A week later, Wiideman showed Kelly the letter. Kelly was "dumbfounded" over the letter because he did not recall it being sent to him.

This defense, however, quickly dissipated. Kelly stipulated at trial that his signature appeared on the federal petition; pursuant to the petition, Kelly declared under the penalty of perjury that "he ha[d] read the above pleading and that the information contained there [was] *true and correct.*" (Emphasis added.) Despite this declaration, during cross-examination, Kelly admitted that FitzSimmons had not "guaranteed" him a five-year maximum sentence. Instead, it was only his "understanding" from the circumstances.

## The Prejudicial Evidence

The above facts show that the State could have convicted Kelly without resort to the sexual assault evidence.[2] Nonetheless, on numerous occasions, the State introduced evidence of the nature of Kelly's prior conviction and evidence of the dismissed charges.

During the State's opening statement, the prosecutor mentioned that Kelly had been charged with four serious felonies and pled guilty to attempted sexual assault. FitzSimmons testified that Kelly pled guilty to attempted sexual assault and had been charged with actual sexual assault, statutory sexual assault, and attempted statutory sexual assault. Moreover, Maddox testified that he had caused a warrant to be issued, based on sexual assault, for Kelly's arrest. In light of the already mentioned

---

[2]The facts referred to above gave the State what some might call a "slam-dunk" case. It is to be regretted that sometimes the State seems to be influenced by what might, for lack of a better term, be called the Oscar Wilde syndrome: "Moderation is a fatal thing. Nothing succeeds like excess."

evidence of his prior conviction and the dismissed charges, Kelly took the stand, and during cross-examination, the State asked whether he had been charged with the four named felonies. Finally, in its closing statement, the State reiterated the four charges.[3]

Evidence of prior crimes, wrongs or acts is not admissible against the accused unless it is substantially relevant for some purpose other than to show the probability that the accused committed the act because of a bad character. *See, e.g.*, Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983). However, such evidence is admissible as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.; see also* NRS 48.045(2).

*The State failed to meet the requirements for admitting the prior dismissed charges.*

In order for prior bad acts to be admissible, the party introducing such evidence must demonstrate the following: (1) that the acts are relevant; (2) that the acts were committed by clear and convincing evidence; and (3) that the probative value of the evidence outweighs the prejudicial value. Beck v. State, 105 Nev. 910, 911, 784 P.2d 983, 984 (1989).

The majority argues that the evidence of the dismissed charges was relevant because it showed that Kelly knew that the letter was forged and that he offered false information in his federal petition. I respectfully disagree.

---

[3]As the majority points out, the district court concluded that the underlying facts of Kelly's conviction were too prejudicial to be admitted. Thus, the district court restricted the State from developing the underlying facts of the conviction and attempted to delete such facts from the exhibits. Unfortunately, the district court's attempts to delete these facts were inadequate. In exhibit 12, a transcript of Kelly's arraignment, the district court scribbled with ink through the language. However, the transcript is still legible, providing:

It alleges that on the particular date that you willfully, unlawfully, and forcibly attempted to subject _____ _____ Kelly, who was born 12/5/68, which would make her—

THE DEFENDANT: Fourteen

THE COURT: — just about 15, yes, to sexual penetration against her will through the use and/or the threat of the use of force under conditions in which the said defendant knew or should have known that she was mentally or physically incapable of resisting and/or understanding the nature of the act because of her young years and/or relationship of father to daughter.

Similarly, in exhibit 11, the memorandum of plea negotiation, the district court attempted to delete the name of the victim, but her name was still legible.

Relevant evidence is that evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015; *see also Beck,* 105 Nev. at 912, 784 P.2d at 984.

There is no evidence in the record to establish that Kelly had been promised a maximum five-year sentence. During his arraignment, the district court asked Kelly whether he understood that sentencing was strictly up to the trial judge. Kelly responded, "Yes, sir, I do." When Kelly moved to withdraw his guilty plea, he failed to mention the alleged agreement which guaranteed him a five-year sentence. Additionally, both FitzSimmons and Maddox testified that they had not guaranteed (nor could they guarantee) Kelly a five-year maximum sentence. In fact, Kelly *admitted* that he had not been promised such a sentence. Obviously, when Kelly filed the federal petition, he *knew* it contained false evidence—the letter which had been doctored by either Kelly or a fellow inmate. Therefore, the State could have demonstrated Kelly's knowledge without reference to the dismissed charges, and the dismissed charges did not tend to prove or disprove any of the material facts in Kelly's forgery trial.

Even if the aforementioned evidence is relevant and tends to prove one of the possible facts enumerated in NRS 48.045(2), it is not admissible if its prejudicial effect outweighs the probative value. *Daly,* 99 Nev. at 567, 665 P.2d at 801. As we stated in Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966):

> Whenever the problem of evidence of other offenses confronts a trial court, grave considerations attend. The danger of prejudice to the defendant is ever present, for the jury may convict now because he has escaped punishment in the past. . . . Indeed, as our system of justice is accusatorial rather than inquisitorial, *there is much to be said for the notion that the prosecution must prove the defendant guilty of the specific crime charged without resort to past conduct.* Thus when the other offense sought to be introduced falls within an exception to the rule of exclusion, *the trial court should be convinced that the probative value of such evidence outweighs its prejudicial effect.*

*Id.* at 130, 412 P.2d at 971 (emphasis added) (citations omitted).

"Evidence of prior crimes is by its very nature potentially prejudicial, particularly where the crimes alleged are sexual." Nix v. State, 653 P.2d 1093, 1098-99 (Alaska Ct.App. 1982). Because evidence of prior sex crimes is extremely inflammatory, the general rule against admission of evidence of prior crimes

should be strictly applied in cases involving sexual assault.[4] State v. Collins, 698 P.2d 969, 973 (Or.Ct.App. 1985); State v. Fears, 688 P.2d 88, 90 (Or.Ct.App. 1984). Here, the prejudicial effect was so great and the probative value, if any, was so minimal that the district court erred in admitting the evidence.

Further, reception of prior crime evidence is justified only by necessity. *Tucker,* 82 Nev. at 130, 412 P.2d at 971. Thus if other evidence substantially demonstrates the elements of the crime involved (such as motive, intent, identity, absence of mistake), "the probative value of showing another offense is diminished, and the trial court should rule it inadmissible even though relevant and within an exception to the rule of exclusion." *Id.* at 130, 412 P.2d at 971-72. Again, the district court erred because, as noted earlier, the State could have proved its case without resort to the evidence of the prior dismissed charges.

Finally, the State never proved by "clear and convincing" evidence that the dropped charges occurred. Indeed, the State did not introduce any evidence that Kelly committed these offenses. Consequently, the State failed to meet any of the elements required to admit these prior dismissed charges into evidence, and the district court erred in so admitting the evidence.

### The nature of the prior conviction was inadmissible.

While I recognize that it would have been impossible to avoid mentioning that Kelly was incarcerated, the district court, in my opinion, also erred in admitting evidence of the *nature* of Kelly's prior conviction. The majority concludes that it was admissible for impeachment purposes.

This conclusion, however, initially ignores the fact that the State mentioned the *nature* of the felony conviction several times before Kelly testified. As with the prior dismissed charges, evidence of the nature of the felony conviction, which was introduced during the State's case-in-chief, was not relevant.

Even so, the State improperly impeached Kelly. Although prior felony convictions may be used to impeach a defendant who testifies, such evidence should not be admitted if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues or misleading the jury. Anderson v. State, 92 Nev. 21, 23, 544 P.2d 1200, 1201 (1976); *see also* Givens v. State, 99 Nev. 50, 52-53, 657 P.2d 97, 99 (1983). Moreover, as

---

[4]Prior crime evidence is likely to inflame the passions of the jury such that the jury may convict the defendant on the sole ground that he is a "bad person," not because he was proven guilty. People v. Hoze, 241 Cal.Rptr. 14, 17 (Ct.App. 1987). I cannot imagine a crime more likely to inflame the jury and label the defendant as a "bad person" than the crime of sexually assaulting one's own minor child.

this court stated in *Givens,* "[w]e recognize that assaultive crimes usually have only slight probative value with respect to veracity . . . ." *Id.* Because of the highly inflammatory nature of the sex crime in this case and its minimal probative value, the prejudicial effect of identifying the nature of the felony conviction substantially outweighed the probative value. Thus, I would hold that the district court erred in admitting this evidence.

### *The error was not harmless.*

The majority recognizes that the State did not prove the prior dismissed charges by "clear and convincing" evidence but concludes that this error was harmless. My brethren reason that because the evidence of the felony conviction was properly admissible, the evidence of the dismissed charges which also involved sex crimes was not prejudicial and, secondly, that there was substantial evidence to sustain the jury verdict.

As noted above, the evidence of the nature of the prior conviction was not admissible. Further, it is ironic that the majority premises the admissibility of the prior dismissed charges on the need to demonstrate Kelly's knowledge, but then, in arguing harmless error, the majority offers a strong recitation of the evidence showing that the State did not need the evidence of the prior bad acts.

The problem is that the majority is essentially concluding that because there was substantial evidence of guilt, the error was harmless. In my opinion, harmless error should not be based simply on this criteria. We explained this point in Weakland v. State, 96 Nev. 699, 615 P.2d 252 (1980):

> [T]his court has established certain guidelines to be followed in exercising its discretion [in determining whether the error was harmless]. These include whether the issue of innocence or guilt is close, the quantity and character of the error and the gravity of the harm charged. *Underlying each of these factors is the "supervisory function of the appellate court in maintaining the standards of the trial bench and bar, to the end that all defendants will be accorded a fair trial."*

*Id.* at 701, 615 P.2d at 254 (quoting in part Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962)) (emphasis added). Likewise, the United States Supreme Court stated it preferred a harmless error rule which was based on "whether there [was] a reasonable probability that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23 (1967) (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)). Otherwise, through our harmless error rule, we are informing prosecutors that whenever there is substantial evidence

of guilt, there is an open invitation for them to introduce the available prejudicial evidence. Such a result undermines the idea that every defendant is entitled to a fair trial and implies that only the innocent defendants have a right to object to errors of law. As stated by Justice Sutherland in Berger v. United States, 295 U.S. 78, 88 (1935):

> [A prosecutor] is . . . the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

I conclude that there is a reasonable probability the needless and prejudicial introduction of the dismissed charges contributed to the conviction. Therefore, the error was not harmless.[5]

For the foregoing reasons, I respectfully submit that the repetitious admission of the nature of the felony conviction and the evidence of the dismissed charges denied Kelly a fair trial. I therefore would reverse the conviction and remand for a new trial.

---

[5]Several years ago during an informal meeting on prosecutorial misconduct with members of our court, a very successful and highly respected former prosecutor stated that during his service, the State usually attempted to present all evidence which might help to convict—with an underlying premise that if admitted, and later a legal issue arose, it would be addressed—usually under the banner of "harmless error." Such a practice needlessly adds to the expense of trial, prolongs the proceedings and may even result in a new trial.